No. 88-351

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

KRISTIE ANN HALSE,

       Plaintiff and Appellant,

  -vs-

JAMES P. MURPHY,

       Defendant and Respondent.

---

APPEAL FROM:  District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Michael E. Wheat; Cok & Wheat, Bozeman, Montana

      For Respondent:

          Douglas Buxbaum; Poore, Roth & Robinson, Butte,
Montana

---

Submitted on Briefs:  Feb. 3, 1989

Decided:  June 8, 1989

Filed:

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


Appellant Kristie Ann Halse appeals to this Court from a summary judgment of the Second Judicial District, Silver Bow County, in favor of respondent, Dr. James Murphy on a medical malpractice action which Halse had instituted on May 3, 1984.

Halse alleged that Dr. James Murphy was negligent when he failed to externally immobilize Halse's fractured arm after he had removed a rod which he had inserted into the ulna bone of her right arm. The fracture was a result of a car accident. The initial medical records, entered when she was admitted to the hospital following the accident, indicate that Halse was 19 years old and well-nourished, appeared to be hypovolemic and had resultant hypovolemic shock; had a comminuted compound Monteggia's fracture of the ulna; had a ruptured bladder and gross hematuria; had multiple face contusions with closed head injury; was comatose; and had multiple pelvic fractures. Dr. James Murphy repaired her right arm fracture. Two other physicians attended to the bladder repair and repair of inter-abdominal organs that were hemorrhaging. The fractures to the ulna could not be repaired by casting and surgery was necessary to repair the ulna and to insert a rod.

Halse was transferred to St. Peter's Hospital in Helena on December 23, 1980 because she showed persistent renal failure. She underwent multiple renal dialysis procedures there. Her urinary function returned and she was transferred back to St. James Hospital in Butte where "she was begun on physical therapy." Because of some persistent problems relating to nursing staff orders, the family transferred Kristie to the Sheridan Hospital in Sheridan, Montana, eight

days later, on January 25, 1981. Her private physician accepted continuing care of the appellant.

In March, 1981, two and a half months after her fracture was repaired, Halse began experiencing palsy in her right hand. Dr. Murphy referred her to Dr. Charles Jennings, an orthopedic surgeon practicing in Great Falls, who specializes in hand problems, for a second opinion. Dr. Jennings' medical records indicate that he removed the cast put on by Dr. Murphy in order to completely evaluate Halse's injuries and to get good X-rays. The X-rays indicated that there was some displacement of the proximal fracture fragment which resulted in some relative shortening of the ulna; and that there was some callus at that site and that the distal fracture site showed "healing." The medical records also stated that Halse was having considerable difficulty with elbow pain due to protrusion of the pin; and that Halse could not flex her elbow more than 30 degrees due to the pain.

Dr. Jennings wrote to Dr. Murphy stating his opinion that Halse would probably recover from the nerve palsy and that Halse had "not developed significant deformity" from this palsy. Dr. Jennings recommended that the pin be removed from the forearm because it was such an irritation to her. He also recommended that if the fracture were not stable enough without immobilization, Halse should be placed in an arm cast again; and that if the proximal fracture fragment appeared to be significantly unstable, he would open it, realign it and fix it with a plate and screws. Dr. Jennings had his occupational therapist fabricate a resting splint to be worn at night which would hold Halse's wrist in slight extension and support the joints at 45 degree flexion. Dr. Jennings encouraged active motion of the wrist and fingers to regain range of movement.

Two weeks after consulting Dr. Jennings, Halse again saw Dr. Murphy. One week after that, on March 31, 1981, Halse was taken to the operating room at St. James where Dr. Murphy removed the pin under regional anesthetic. The hospital medical records indicate that a stab wound was made over the tip of the rod; an extractor was then screwed into the rod; and it was removed by means of a mallet. The wound was irrigated and the skin was closed with two sutures of stainless steel wire. A sterile dressing was applied and Halse left the operating room awake and in good condition to go to the ward. No bleeding occurred. Dr. Murphy did not recast the arm but gave Halse a removable splint to use as she deemed necessary.

Dr. Murphy continued to see Halse after the removal of the pin. It is at this stage that Halse, and subsequently Dr. Humberger, allege that Dr. Murphy was negligent. Halse asserts that Dr. Murphy did not X-ray the arm after removal of the rod, nor did he palpate the arm. Halse asserts that had he done so the unhealed fracture in the arm would have been detected. Dr. Humberger, in his late affidavit, states that if these facts are true, Dr. Murphy was negligent.

Halse moved to Great Falls in the summer of 1981. While there, she consulted Dr. Jennings' associate, Dr. Bloemendaal and a Great Falls surgeon, Dr. Mungas.

On September 9, 1981, she was seen by Dr. Murphy in Bozeman and again on October 23, 1981. Murphy's records show no complaint about her arm.

One year later, on October 29, 1982, Halse consulted physicians at the orthopedic department of the University of Washington. She was seen there by Dr. Theodore Greenlee. Dr. Greenlee X-rayed her arm and found that there was a non-union of the proximal ulnar fracture and possibly of the middle one-third of the distal ulnar fracture. He

- 4 -

recommended a bone graft and plating of her fracture. On November 9, 1982, Halse underwent surgery at the University of Washington. The two ulnar non-union sites were debrided and plates were attached to the bone.

On April 29, 1983, Halse was seen by Dr. Humberger in his office. Dr. Humberger's records indicate that Halse's wound was well healed. However, Dr. Humberger indicated that Halse had contracted osteomyelitis and that there "is a potential for the infection to flare up at any time." Dr. Humberger discontinued Halse's antibiotic treatment for the osteomyelitis on June 10, 1983. On July 22, 1983, Halse returned to Dr. Humberger with complaints of an aching sensation and tenderness in the ulna. The X-rays showed the wound to be well healed but there was a small lytic area beneath the plate which had been attached in Seattle. For this reason, Humberger put Halse back on Tegopen, a penicillin drug.

Humberger suggested removal of the plates and curretage of the bones. This was done on August 10, 1983. On August 22, 1983, the surgical staples were removed. The wound appeared well healed. Halse was advised, "warm soaks, active range of motion exercises, proper wound care, minimal resistance activity." Two weeks later, on September 6, Dr. Humberger's records indicate that the wound was healing well. He did not feel X-rays were necessary. He advised the same care of the arm as before and asked Halse to come back in one month.

One month later, October 6, Dr. Humberger's records indicate that Halse bumped her arm while driving. She now had a transverse crack across the ulna and a small fracture through one of the screw holes. Dr. Humberger advised her to continue wearing her present splint, to perform range of

motion exercises to the elbow and to remove the splint while bathing.

On October 25, Halse was started back on Tegopen again by Dr. Blackwood, an associate of Dr. Humberger, because she felt "the infection might be back."

On November 3, Halse entered Dr. Humberger's office without her brace and said she had no symptoms referable to her forearm. On physical examination, she was tender over the ulna but had good flexion/extension. The X-rays showed that the midshaft ulna fracture was in good position and alignment, but the bone was not healed. Dr. Humberger advised Halse of the necessity of wearing the splint to protect the ulna in hope that it would heal. He expressed his disappointment that Halse had not been wearing the splint. He noted that Halse was very discouraged in regard to the prolonged treatment necessary for her arm. Dr. Humberger advised her to wear her brace to protect her arm.

On December 13, 1983, X-rays showed that the new fracture was not healing.

On April 30, 1984, Halse commenced this action against Dr. Murphy. An answer was filed on August 8, 1984. Extensive discovery took place over a two year period. On July 16, 1987, appellant requested a trial date. Trial was set for September 22, 1987. On August 28, respondent made a motion for summary judgment. On September 1, twenty-one days before the trial date, Halse's counsel withdrew. Two months later, on November 23, 1987, Attorney Michael Wheat requested, in writing, 30 additional days to evaluate Halse's case and to respond to respondent's motion for summary judgment. On January 1, 1988, respondent again noticed his motion for summary judgment and the motion was heard on February 5, 1988. Appellant again requested additional time to have "the file reviewed by a physician for an opinion."

The court again gave appellant thirty additional days (until March 6, 1988) to respond to the summary judgment motion.

On March 10, 1988, the respondent's motion for summary judgment was granted. On April 7, 1989, Dr. Frank Humberger, in a written affidavit, stated, it was his opinion that, if facts were correct, that it was his opinion that Dr. Murphy was negligent in his care and treatment of Halse.

On April 21, 1988, appellant's counsel filed a motion for relief from the judgment. Michael Wheat, appellant's counsel, testified by affidavit that Halse had made every effort to locate expert testimony in her medical malpractice case. Halse was unable to elicit an opinion from Dr. Humberger concerning Dr. Murphy's care and treatment of her. Appellant's counsel contacted various medical doctors in California and New Mexico in an effort to obtain an expert opinion but to no avail.

Halse's motion for relief from final judgment was under the provisions of Rule 60(b), M.R.Civ.P. That rule provides:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).

Rule 59(b) provides:

> Time for motion. A motion for a new trial shall be served not later than 10 days after service of notice of the entry of the judgment.

The first issue before this Court is whether an opinion of a trial expert, offered for the first time after final judgment and based upon a fact asserted by the plaintiff and within her knowledge prior to the judgment, can constitute "newly discovered evidence" under Rule 60, M.R.Civ.P. We see

no reason to distinguish between opinion evidence and other kinds of evidence, if the opinion evidence itself meets the tests ordinarily required of newly discovered evidence.

This case is not a judgment as a result of a trial on the merits. The negligence issue presented by Halse was never litigated. The purposes of our Rules of Civil Procedure are to speed up court processes and facilitate the deciding of cases on their merits.

The new rules encourage disposition of cases quickly and on the merits, and it is a serious matter when a party moves to have a case disposed of on grounds other than the merits. Rambur v. Diehl Lumber Co. (1964), 144 Mont. 84, 394 P.2d 745.

6A J. Moore, J. Lucas & G. Grotheer, Jr. Moore's Federal Practice ¶ 60.23[3] (2d ed. 1983) states:

> . . . [I]f new evidence is discovered, or by due diligence could have been, in time for a new trial under Rule 59(b), then a motion for a new trial must be made within that time; and that party cannot delay beyond that time and seek relief under Rule 60(b)(2).. . . If so, the motion must be made within a reasonable time, and, in any event, not later than one year after the "judgment, order or proceeding was entered or taken."

6A J. Moore, J. Lucas & G. Grotheer, Jr. Moore's Federal Practice ¶ 60.23[4] (2d ed. 1983) states:

> [F]or relief to be granted under Rule 60(b)(2), the failure to produce the evidence at the trial must not have been caused by the moving party's lack of due diligence.

The failure to produce the evidence at the trial must not have been caused by the _moving_ _party's_ lack of due diligence. See Kansas City Area Transportation v. State of Missouri (8th Cir. 1981), 640 F.2d 173. For years, Halse's counsel sought extensions to obtain an expert who would

testify in her behalf. It would be unjust for this Court to deny Halse her day in court.

The history of Rule 59(b) has aided us in making this decision.

> Original Rule 59(b) made an exception for a motion for new trial on the ground of newly discovered evidence by providing that such a motion could be made within the time allowed for appeal, which, at that time, was three months as a general proposition. The grounds for substantial relief from a final judgment under original Rule 60(b) <u>did not originally include newly discovered evidence</u> . . .; The 1946 revision of the Rules did the following things. It eliminated the exception in Rule 59(b) relative to a motion for a new trial on the ground of newly discovered evidence, so that a motion under Rule 59 on this ground, as on any other ground, must be served not later than 10 days after the entry of judgment. (Emphasis added.)
>
> . . . If new evidence is discovered, or by due diligence could have been, in time to move for a new trial under Rule 59 then a party is subject to the 10 day limit of Rule 59; and such a timely motion destroys the finality of the judgment for purposes of appeal. Otherwise a party may move under Rule 60(b) within a reasonable time, but not more than one year after the judgment was entered. Such a motion under 60(b) does not affect the finality of the judgment or suspend its operation.

6A J. Moore, J. Lucas & G. Grotheer, Jr. Moore's Federal Practice ¶ 59.04 (2d ed. 1983).

The evidence must be admissible and credible, must be of such a material and controlling nature as will probably change the outcome. 6A J. Moore, J. Lucas & G. Grotheer, Jr. Moore's Federal Practice ¶ 60.23[4]. Twenty-four days after respondent's summary judgment was granted, Dr. Humberger testified by signed affidavit that when he gave his deposition testimony on December 22, 1986, he was unable to render an opinion concerning Kristie's case because he had not had the opportunity to review Dr. Murphy's notes and

records. This fact shows the requisite diligence on Halse's part.

The belated evidence submitted by Dr. Humberger would have precluded the granting of the summary judgment. For this reason, the summary judgment must be reversed.

The second issue before this Court is whether this expert opinion, if it is "newly discovered evidence," would change the outcome where it simply shows that the defendant was negligent but fails to show that such negligence was the proximate cause of any injury. In our court system, it is the jury, not witnesses, who decide such questions of negligence.

We reverse the judgment and remand this action to the District Court for further proceedings.

_____
                Justice

We Concur:


_____
        Chief Justice



_____



_____
                Justices

- 10 -

Mr. Justice John Conway Harrison, dissenting.

I dissent and would find that the affidavit testimony of Dr. Humberger does not constitute "newly discovered evidence" which entitles appellant to relief from judgment.

In December, 1980, Halse was involved in an automobile accident in which she suffered, among several other injuries, a tri-segmental fracture of her right forearm. Halse was treated by Dr. Murphy, an Orthopedic surgeon practicing in Butte, Montana. Dr. Murphy treated the fracture by placing a metal rod through the ulna. After numerous medical visits to Dr. Murphy and after examination by another Orthopedic surgeon in Great Falls, Montana, Dr. Murphy removed the rod from Halse's arm on March 31, 1981.

Halse was examined on October 29, 1982, by Dr. Theodore Greenlee of University Hospital, Seattle, Washington. From x-rays, Dr. Greenlee discovered Halse had a "nonunion of her proximal ulna fracture as well as possibly a middle one-third distal one-third ulnar fracture." On November 9, 1982, Dr. Greenlee repaired the two nonunion sites with plates and screws. After returning to Montana, Halse was under the care of Dr. Frank Humberger, an Orthopedic surgeon practicing in Bozeman, Montana.

In October, 1983, Halse bumped her right arm while traveling to Denver, Colorado and suffered a transverse crack across the ulna. However, this crack apparently is unrelated to the original fractures suffered in the 1980 automobile accident. Halse remained under the care of Dr. Humberger for the treatment of the fracture.

Halse instituted a medical malpractice action against Dr. Murphy on May 3, 1984. The Complaint alleged Dr. Murphy removed the metal rod before her arm healed, and that Dr. Murphy negligently failed to x-ray or otherwise determine

11

whether the fracture had healed before he removed the metal rod. Additionally, Halse alleged Dr. Murphy negligently failed to externally immobilize the arm so as to permit it to heal, but merely gave Halse a splint to wear as needed.

After interrogatories were propounded and depositions noticed and taken by both parties, the preliminary pretrial order set an August 7, 1987 deadline for notices of depositions. On August 25, 1987, Murphy moved for summary judgment on the grounds that Halse's claim "fails for fundamental want of proof" because none of Halse's expert witnesses testified applicable standards of medical care were violated.

On September 3, Halse's original counsel moved to withdraw from the case and for a continuance. The District Court vacated the September 4 hearing date scheduled for Murphy's summary judgment motion. On January 22, 1988, counsel for Murphy rescheduled the hearing for February 5, 1988, and sent notice of the hearing to Halse's original counsel. On February 4, attorney Michael Wheat moved the court for a continuance and submitted his affidavit in which he stated he had not yet decided whether to represent Halse. He stated he was attempting to find a doctor who would review the medical records and render an opinion about Murphy's care and treatment of Halse.

During the brief hearing on February 5, 1988, Mr. Wheat again informed the Judge he was not counsel of record but needed time to find an expert witness.

> THE COURT: Mr. Wheat said they have an expert that might qualify [to testify against Dr. Murphy].
>
> MR. WHEAT: This is an expert independent of any of the experts that Mr. Buxbaum has had notice of up to this date.

12

THE COURT: OK. Well, something I don't see is an order dismissing . . . [original counsel]. You haven't taken the position of being counsel of record.

MR. WHEAT: No.

THE COURT: I think in all fairness to the Plaintiff here, we are going to allow Mr. Wheat time to confirm that doctor. When can you do that, Mr. Wheat?

MR. WHEAT: I think it can be done within thirty (30) days . . . I think we can easily be prepared to know within thirty days.

. . .

THE COURT: I will give you a continuance here but I would like to hear in thirty (30) days.

MR. WHEAT: You will, your honor.

. . .

THE COURT: Nevertheless if you don't come up with some evidence from an expert that there is a case of malpractice here, you are going to be out of Court.

MR. WHEAT: I understand that.

THE COURT: There is no chance going to trial if you can't come up with an expert.

MR. WHEAT: Absolutely, your honor, and I have explained that to Mrs. Halse. She understands.

THE COURT: OK, you have thirty (30) days.

When no evidence was forthcoming, Judge Sullivan granted Murphy's motion for summary judgment on March 10,

1988. Final judgment was entered in favor of Murphy on March 14, 1988.

On April 22, 1988, Halse filed a Motion for Relief From Judgment, pursuant to Rule 60(b), M.R.Civ.P., "on the strength of her Affidavit . . . and the newly discovered evidence set out in the Affidavit of Frank W. Humberger, M.D. . . . " On May 2, 1988, the District Court ordered that Murphy would have until May 31, 1988, to respond to the motion.

Murphy responded to the motion by brief on May 19, 1988 and the District Court ordered a July 1, 1988 hearing on the motion. On June 27, 1988, Murphy requested the July 1 hearing be vacated. Under Rule 60(c), Murphy argued, the motion was deemed denied since 45 days had elapsed from the date the Rule 60(b)(2) motion was made, which put the motion out of the District Court's jurisdiction.

On June 29, 1988, the District Court vacated the hearing on the ground the motion was deemed denied. Halse appealed the denial of her Rule 60(b)(2) motion to this Court.

Rule 60(b), M.R.Civ.P., provides in part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . .
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) . . .

In Kartes v. Kartes (1977), 175 Mont. 210, 214, 573 P.2d 191, 193, this Court stated the basic criteria for

14

determining whether to grant relief from judgment under Rules 59 and 60, M.R.Civ.P.:

> 1. The substantial rights of the party moving for new trial must be materially affected.
>
> 2. The "newly discovered" evidence sought to be introduced must be material to the issue involved in the trial.
>
> 3. The "newly discovered" evidence must be such as could not have been <u>discovered</u> <u>and</u> <u>produced</u> at <u>trial</u> <u>with</u> <u>the</u> <u>exercise</u> <u>of</u> <u>reasonable</u> (<u>or</u> "<u>due</u>", <u>per</u> <u>Rule</u> <u>60,</u> <u>M.R.Civ.P.)</u> <u>diligence,</u> <u>or</u> <u>could</u> <u>not</u> <u>have</u> <u>been</u> <u>discovered</u> <u>by</u> <u>reasonable</u> <u>diligence</u> in time to move for a new trial under Rule 59, M.R.Civ.P. (Emphasis added.)

Additionally, in Kerrigan v. Kerrigan (1943), 115 Mont. 136, 144, 139 P.2d 533, 535, this Court correctly noted that the burden is on the moving party to show:

> (1) That the evidence must have come to the knowledge of the applicant since the trial; (2) that it was not through want of diligence that it was not discovered earlier; (3) that it is so material that it would probably produce a different result upon another trial; (4) that it is not cumulative merely—that is, does not speak as to facts in relation to which there was evidence at the trial
> . . .

The essence of Halse's "newly discovered" evidence is the affidavit testimony of Dr. Humberger, in which he gives an opinion based upon circumstances which were available for his consideration <u>prior</u> to the grant of summary judgment. Humberger's affidavit states in part:

> 3. On December 22, 1986, I gave deposition testimony concerning my care and treatment of Kristie. During that deposition, I was unable to render an

15

opinion concerning the care and treatment of Kristie by Dr. James P. Murphy <u>because I had not had the opportunity to review Dr. Murphy's medical notes and records</u>.

4. Since the date of my deposition, I have reviewed all of Dr. Murphy's medical notes and records related to his care of Kristie, including an x-ray taken on March 24, 1981, and <u>I have also reviewed the Affidavit of Kristie, wherein she states that Dr. Murphy failed to palpate her arm following removal of the rod on March 31, 1981.</u> Based on my review of the March 24, 1981, x-ray of Kristie's arm, Dr. Murphy's medical notes and records, and Kristie's Affidavit testimony that Dr. Murphy did not clinically assess the stability of her arm by palpating her arm following removal of the rod, <u>and assuming this fact to be true</u>, then it is my opinion that Dr. Murphy was negligent in his care and treatment of Kristie, and failed to exercise that degree of care and skillfulness ordinarily used in like cases by other doctors practicing in Dr. Murphy's specialty. (Emphasis added.)

Halse claims that, despite her "previous diligent attempts to obtain an opinion," Dr. Humberger would not render an opinion prior to entry of summary judgment. However, Humberger's own affidavit states that he was unable to render an opinion because he did not have Murphy's notes and records. I can only assume that Humberger would have rendered his opinion had he been given the opportunity to review those records and consider the testimony of Halse.

There is no evidence before this Court showing that Humberger was asked to give his opinion based upon a hypothetical set of circumstances prior to entry of judgment. If, based upon those hypothetical circumstances, Humberger had been of the opinion Murphy was not negligent, but,

16

subsequent to the entry of summary judgment, changed that opinion, Halse could more plausibly argue this constitutes "newly discovered" evidence. However, notwithstanding Halse's label of "conspiracy of silence," Humberger's opinion, whatever it may have been, could have been discovered prior to entry of summary judgment.

Halse argues the District Court's deemed denial of her Rule 60(b)(2) motion constitutes an abuse of discretion. I disagree. It is my conclusion that Humberger's affidavit testimony does not constitute newly discovered evidence under Rule 60(b)(2), M.R.Civ.P., and I would find no abuse of discretion.

I would affirm the decision of the District Court.

_____
Justice

Mr. Chief Justice J. A. Turnage and Mr. Justice L. C. Gulbrandson join in the foregoing dissent of Mr. Justice John Conway Harrison.

_____
Chief Justice

_____
Justice

17