No. 92-171

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

DONALD C. COWLES,

      Plaintiff and Respondent,

-v-

JEAN SHEELINE, PAUL C. SHEELINE,
FRANCIS ELDREDGE and the heirs and
devisees of NELLE B. COX, PAUL D.
SHEELINE, SAMUEL D. STEVENS, GEORGE
H. POORE, JOHN F. TYLER, WENDELL L.
JACQUITH, ALTON W. ELDREDGE, CYRUS
B. MENDENHALL a/k/a C.B. MENDENHALL,
SUSAN A. MENDENHALL, NATHANIEL STEVENS,
ELIZABETH P. STEVENS, ETHAN H. COWLES,
BESSIE COWLES, ALL STOCKHOLDERS AND
SUCCESSORS IN RIGHT, TITLES AND
INTEREST TO THE COWLES MINING CO. INC.,
a Montana Corporation, and ALL PERSONS
KNOWN OR UNKNOWN, CLAIMING OR WHO
MIGHT CLAIM RIGHT, TITLE, ESTATE OR
INTEREST OR LIEN OR ENCUMBRANCE UPON
THE REAL PROPERTY DESCRIBED IN THE
COMPLAINT OR ANY THEREOF ADVERSE TO
PLAINTIFF'S TITLE THERETO, WHETHER SUCH
CLAIM OR POSSIBLE CLAIM BE PRESENT OR
CONTINGENT, INCLUDING ANY OF DOWER,
INCHOATE, OR ACCRUED,

      Defendants and Appellants.

FILED

JUN 10 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Sixth Judicial District,
In and for the County of Sweet Grass,
The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Richard W. Josephson, R. Mark Josephson, Josephson
        & Fredricks, Big Timber, Montana

    For Respondent:

        J. David Penwell, Bozeman, Montana

          Submitted on Briefs:  February 4, 1993

                 Decided:  June 10, 1993

Filed:

                              Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendant, Jean Sheeline, herein called defendant, appeals the order of the District Court of the Sixth Judicial District, Sweet Grass County, in an action to quiet title to mining claims near Cooke City, Montana. The District Court awarded Donald C. Cowles, herein called plaintiff, a 50% ownership, and defendant the remaining 50% ownership in the assets of Cowles Mining Company. In a separate appeal, defendant also appeals the District Court's order denying her Motion for Relief of Judgment based upon newly discovered evidence. These have been consolidated into this one appeal. We affirm.

The issues presented for our review are restated as follows:

1. Did the District Court err in determining that plaintiff and defendant each owned 50% of the stock in Cowles Mining Company?

2. Did the District Court err in admitting certain testimony of Don C. Cowles, Jr.?

3. Did the District Court err in awarding costs to plaintiff?

4. Did the District Court err in not granting defendant's motion for relief of judgment based on newly discovered evidence?

Plaintiff brought this action to quiet title to real property owned by Cowles Mining Company (the Company), a Montana corporation which was dissolved by operation of law in 1982. The disputed property includes ten patented mining claims encompassing an area of approximately 176 acres.

Cowles Mining Company was incorporated in Montana in 1902. The original principal shareholders were plaintiff's grandfather,

2

Ethan H. Cowles (E. H. Cowles), and Nathaniel Stevens. E. H. Cowles and Nathaniel Stevens each transferred five patented mining claims to the Company. A minimal number of shares were issued to several other persons. The Articles of Incorporation authorized the Company to issue one million shares of $1.00 par value common stock.

The 1902 corporate charter limited the Company to forty years of existence. Although the Company mined gold in its early years, operations ceased when a stamp mill it had constructed was destroyed by fire in 1904. Nonetheless, the original charter was extended in 1946 for an additional forty years. Cowles Mining Company retained ownership of the same ten patented mining claims throughout its existence.

In order to dispose of plaintiff Cowles' claim against defendants, the District Court was required to analyze and evaluate a complex maze of confusing and incomplete testimony and exhibits dating back to 1902. Although numerous defendants are named in this action, Jean Sheeline is the sole defendant claiming shares in the Company. She claims to be the successor to shares representing Nathaniel Stevens' stock ownership. She claims this ownership through a number of different parties, including her husband, Paul D. Sheeline. E. H. Cowles' stock ownership in the Company passed to Nelle Cox, plaintiff's aunt, and then to plaintiff.

Plaintiff testified that he examined the Company stock book in Paul D. Sheeline's Boston office in 1967 and made an incomplete handwritten list of transactions dating from 1902 to 1920. The

3

same records were examined by Paul C. Sheeline, defendant's stepson. Defendant testified that the stock book had been lost or destroyed and was therefore not available in evidence.

Other evidence established that the original owners, E. H. Cowles and Nathaniel Stevens, intended that each would own 50% of the controlling interest in the Company with 5000 of the 1,000,000 shares to be split among the corporate attorney and several other officers. At trial, plaintiff was the only person who presented stock certificates. Plaintiff's certificates represented 144,500 shares of Company stock.

The evidence established that a number of E. H. Cowles' share certificates were lost in a 1917 fire in Livingston, Montana. No replacement shares were ever issued. Evidence also established that E. H. Cowles had turned in shares to Stevens as his share of the expense to construct a new stamp mill. This stamp mill was never built and there was no evidence to demonstrate the share certificates were returned to E. H. Cowles.

E. H. Cowles was active in the Company operations. He and Nathaniel Stevens had been schoolmates in their youth and remained friends thereafter. Nathaniel Stevens' involvement in the Company appears to be that of investor and controller of corporate records. Evidence established that Stevens was a wealthy industrialist who owned textile companies which later merged and became J. P. Stevens Co., a multi-million dollar corporation. The Montana gold mining company, which appears to be the major effort and drain of E. H. Cowles' financial resources during his lifetime, was only one of

4

many investments made by Stevens.

The record contains numerous correspondence records saved by E. H. Cowles, his daughter Nelle Cox, and plaintiff which indicate their continuing efforts to either sell the Company, interest investors and exploratory activities, or purchase the remaining shares from Stevens' successors in interest.

George Naylor, an attorney of the firm of Tyler, Eames and Reynolds, one-time attorneys for Stevens and the Company, testified that Nathaniel Stevens wanted to dispose of the stock for estate tax purposes prior to his impending death and that Paul D. Sheeline acquired the shares from the Stevens family in 1946 for the sum of one dollar. Nathaniel Stevens died in 1946. No other evidence was presented to establish the selling price. Paul D. Sheeline died in 1979.

Paul C., Jean, and William Sheeline and George Naylor testified about what happened to all corporate records. Paul C., Jean and William believed that they were destroyed when the Paul C. Sheeline family moved from the house where the records had been kept in an attic box. George Naylor testified that he thought many of the records had been destroyed by his office on his instruction so as to save storage space.

Plaintiff, 76 years old at the time of trial, and his predecessors in interest, established their continuing interest in the mining company and demonstrated continuing efforts regarding the property throughout the years of their ownership. E. H. Cowles paid the taxes on the property until his death in 1938. After that

5

time, taxes were paid by a lessee, Paul D. Sheeline, Frances Eldredge, Jean Sheeline, and the Boston law firm of Tyler, Eames and Reynolds.

The District Court determined that plaintiff and defendant each owned 50% of the stock of the Company. The District Court stated its reasons for the decision to award each party 50% as partly because defendant was unable to produce records and partly because the court believed that her predecessors had attempted to "squeeze Cowles out and arbitrarily deprive them of their stock and their interest in the mining claims . . . and [defendant cannot be] permitted to profit by such legal maneuvering and manipulation by her predecessors."

The court's order dated March 3, 1992, awarded 50% to each party. On March 22, 1992, defendant found what she claims are numerous and significant records of Cowles Mining Company, including actual stock certificates issued in the names of Paul D. Sheeline, Paul C. Sheeline and Alton Eldredge totalling 797,500 shares. These records also included stock transfer records, correspondence and other documents demonstrating stock ownership which defendant claims may complete the list made by plaintiff in 1967. The stock book, however, was not among these records.

On May 4, 1992, defendant filed a Rule 60(b), M.R.Civ.P., motion for relief from judgment based on newly discovered evidence. On July 6, 1992, which was beyond the time allowed by Rule 60(c), M.R.Civ.P., for ruling on the motion, the District Court issued an order denying this motion, with an explanation of its reasons for

6

denial. The defendant appealed the denial of this motion.

I.

Did the District Court err in determining that plaintiff and defendant each owned 50% of the stock in Cowles Mining Company?

Defendant contends that the District Court could only reach a result that plaintiff owns 50% of the former assets of the Company by weaving an unsubstantiated tale of deception, illegalities and fraud and by utterly ignoring evidence. She further contends that the District Court disregarded and misapprehended ordinary common knowledge and understanding of corporate dealings and proceedings. Defendant assigns clear error to at least 17 specific findings of fact and contends that nearly all of the court's 56 findings are incorrect.

This Court will affirm a district court's findings and conclusions unless they are clearly erroneous. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287. In DeSaye, this Court adopted the following three-part test to determine if findings are clearly erroneous: (1) first, the Court will review the record to see if the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, we will determine if the trial court has misapprehended the effect of the evidence; and (3) if both substantial evidence exists and the effect of the evidence has not been misapprehended, whether a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed. DeSaye, 820 P.2d at 1287. Substantial evidence is

7

evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a scintilla of evidence and it may be somewhat less than a preponderance of evidence. Barrett v. Asarco, Inc. (1990), 245 Mont. 196, 200, 799 P.2d 1078, 1080.

Defendant first objects to the general finding which relates to the amount of stock that E. H. Cowles owned when he died in 1938 and the court's conclusion that E. H. Cowles owned 50% of the stock at that time. Defendant contends that the specific findings do not recognize the fact that E. H. Cowles at times sold shares and transferred shares to the corporation in exchange for new share certificates. Plaintiff contends that the evidence supports the court's ruling and, more importantly, that the evidence did not support defendant's position. We agree with plaintiff.

The District Court based its decision to award 50% of the assets of the defunct mining corporation partially on exhibits from 1902 which demonstrate Nathaniel Stevens' and E. H. Cowles' intent that each own equal shares, and partially by other evidence, including plaintiff's notes from 1967 and the certificates and letters in plaintiff's possession. The documents indicate that 497,500 shares were issued to E. H. Cowles and that the same number were to be issued to Nathaniel Stevens. The District Court found that E. H. Cowles sent certificates in as security for the stamp mill which was never built and that there was no evidence of the return of such certificates to him. The District Court also determined there was no evidence E. H. Cowles ever sold any of his stock. After a careful reveiw of the record, we affirm the

8

conclusion of the District Court that E. H. Cowles did not dispose of any of his stock in the Company after its original issue.

Defendant next contends that the District Court erred in finding that stock Certificate No. 84 was illegal and that the 1946 corporate proceedings were fraudulent and illegal. There is substantial evidence questioning the validity of Certificate No. 84 issued around 1920 to Nathaniel, Samuel and Moses Stevens for 797,500 shares. That evidence indicates there was an issuance of stock exceeding the authorized limit of 1,000,000 shares. Defendant's claim is based upon Certificate No. 84.

The evidence established that plaintiff went to Boston in early 1946 and spoke to Stevens' attorney, George Naylor. At that time he tried to acquire other shares in the Company. He also spoke with Paul D. Sheeline and communicated his interest in acquiring shares to Paul D. Sheeline. Naylor and plaintiff discussed a general figure of $500-600 for the Stevens shares in the Company. Naylor later communicated to plaintiff that a better offer had been accepted. This better offer turned out to be $1.00 from Naylor's friend, Paul D. Sheeline. The District Court concluded that plaintiff's 1946 visit sparked Paul D. Sheeline's interest in the Company.

After plaintiff's 1946 visit, a corporate reorganization took place. The District Court found "there are numerous facts making it highly suspect that the purported shareholder meetings ever occurred, or if they did, whether they were lawful." There is no evidence that Nelle Cox ever received notice of these meetings,

9

despite Paul D. Sheeline's knowledge of her stock ownership as evidenced by his correspondence with her. Plaintiff was not notified of any of the 1946 meetings, even though he was well known to counsel for the defendant and operated a drug store within one block of the law offices in Livingston. In addition, plaintiff filed a post-trial affidavit stating that he checked the appropriate newspaper for publication of a notice of shareholders' meeting and no notice appeared.

The District Court expressly found the minutes of the 1946 meetings to be "unreliable and inaccurate." The court stated:

> 36. Under these circumstances, it would be unconscionable, if not fraudulent, to the Cowles family to give said minutes legal effect as to the number of shares of stock then outstanding or who the lawful owners were, as to do so would be to condone an apparent attempt to squeeze Cowles out and arbitrarily deprive them of their stock and their interest in the mining claims. Such events occurred long before Jean Sheeline became involved, and she is not responsible for them, but neither can she be permitted to profit by such legal maneuvering and manipulation by her predecessors.

Naylor stated that the reason for selling the stock to Sheeline after plaintiff's 1946 visit was to get the stock out of Nathaniel Stevens' very substantial estate before he died. Stevens in fact died shortly after that time. The court added the following information about Naylor's testimony:

> 37. . . . [B]ut sale to Don Cowles would have accomplished that. Whatever the reason, it would have been customary to give the stockbook and all the corporate records to Sheeline, but Naylor went on to say they were destroyed, which makes no sense. As hereinafter indicated, Paul was in fact later found to have possession of the stockbook by plaintiff. Naylor also testified at one point there was an offer of

10

$250,000 per claim for the property, but yet he arranged sale to Sheeline for $1.00, and stated that he had no idea if there was one certificate, numerous ones, or the number of shares they represented. These inconsistencies render Naylor's testimony of little value.

We conclude the District Court carefully reviewed the evidence and based its finding that the proceedings were illegal on the conclusions that Certificate No. 84 was illegal and that Nelle Cox and plaintiff were not informed or aware of these proceedings. The record contains substantial evidence to support this finding.

Defendant also contends that the court found that no evidence existed to prove the number of shares owned by defendant or her predecessors. Clearly, the court determined that defendant succeeded to the Stevens' interest and this is evidenced by its award to her of 50% of the ownership in the claims. Most of the evidence presented to establish defendant's ownership was oral testimony. She presented no written evidence of ownership other than the minutes of the 1946 meetings. The only other evidence to establish that defendant owned shares is George Naylor's testimony and the testimony of the Sheeline family. We conclude the District Court's findings reflect its consideration of this as well as the interests of the Stevenses to which she claims to have acquired.

This Court has thoroughly reviewed the record to determine that the numerous findings of the District Court are supported by substantial evidence. Applying the second and third factors of the DeSaye test, we further conclude that the District Court has not misapprehended the effect of the evidence and we are not left with a firm conviction that a mistake has been made.

11

We hold that the District Court's findings relative to stock ownership and the 1946 proceedings to reorganize the corporation are not clearly erroneous.

## II.

Did the District Court err in admitting the testimony of Don C. Cowles, Jr.?

Defendant contends that the District Court should not have admitted Don C. Cowles, Jr.'s testimony and exhibits because he was not disclosed as an expert witness, he was not qualified as either an expert or a lay witness to give the testimony he presented and the exhibits he prepared and testified about were presented for the first time at trial.

Defendant responded to her receipt of Don C. Cowles, Jr.'s exhibits on the first morning of the trial with a formal Memorandum of Objection to his testimony and exhibits. Defendant contends that the District Court allowed the witness to determine how many shares were issued and who owned them, which is expert opinion testimony on the ultimate issue in the case and invaded the province of the trier of fact. The District Court responded as follows to that objection:

> THE COURT: Well, I'm going to let Mr. Penwell proceed in part, and I don't know just what questions he will ask, but if it will save the Court pawing through several hundred exhibits to see that one letter refers to two shares and another one to ten shares and so forth, to trace the title to them, you don't have to be an expert to do that as far I can see, and so I may permit some answers. Let's see what Mr. Penwell asks him.

Defense counsel then asked if he could have a continuing objection.

12

The District Court denied this request and ordered him to make objections as the testimony progressed.

Part of Don C. Cowles, Jr.'s testimony involved his interpretation and his typewritten copy of his father's handwritten notes from the Company stock book, which incorporated information from other exhibits which had been introduced to prove plaintiff's ownership interest. Defendant subsequently objected to the admission of Exhibits 78 and 79. Exhibit 78 purported to determine which share certificates were reissued in Certificate 84, a certificate which the court found was illegal. Exhibit 79 was a document prepared by Don C. Cowles, Jr. which summarized plaintiff's position on the total number of shares as exceeding the 1,000,000 authorized.

Defendant contends that Rule 602, M.R.Evid., prohibits the lay witness from testifying to matters not within his personal knowledge and that Don C. Cowles, Jr. was allowed to testify to such matters. The result was that the court allowed him to testify as an expert and, thus, abused its discretion. Plaintiff contends that Don C. Cowles, Jr. did not testify as an expert and that the exhibits served no function other than as demonstrative evidence, admitted by the court "as aids to the court" to clarify Exhibit 68, the notes of plaintiff, Don Cowles, Sr., and to determine totals of stock ownership.

Rules 602, M.R.Evid., limits a witness' testimony to his personal knowledge. Further, "a lay witness may even give an opinion on an ultimate factual issue if it complies with the

13

foundational requirements in Rule 701, M.R.Evid., however, the opinion testimony must be 'confined to matters of fact.'" First Bank (N.A.) -- Billings v. Clark (1989), 236 Mont. 195, 202, 771 P.2d 84, 88 (quoting In re the Estate of Smith (1988), 230 Mont. 140, 148, 749 P.2d 512, 517; and Rule 704, M.R.Evid.).

Clearly, the court did not allow Don Cowles, Jr. to testify as an expert witness; rather, the court permitted Cowles to proceed to testify and determined the propriety of plaintiff's counsel's questions as each was asked. Rule 701, M.R.Evid., provides:

> **Rule 701. Opinion testimony by lay witnesses.**
> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

The record demonstrates that the court allowed Cowles to testify about the summaries he had made relating to the other exhibits in evidence and admitted his exhibits for demonstrative purposes only.

Demonstrative exhibits are admissible if they supplement the witness' spoken description of the transpired event, clarify some issue in the case, and are more probative than prejudicial. Palmer by Diacon v. Farmers Ins. Exch. (1988), 233 Mont. 515, 522-23, 761 P.2d 401, 406. They are inadmissible only when they do not illustrate or make clearer some issue in the case; that is, where they are irrelevant or immaterial, or where they are of such a character as to prejudice the jury. Workman v. McIntyre Const. Co. (1980), 190 Mont. 5, 24, 617 P.2d 1281, 1291 (citing 29 Am. Jur. 2d Evidence § 785). The testimony given by Don C. Cowles, Jr. was

14

relevant in that it helped to clarify plaintiff's position on the number of shares issued.

The admission of such evidence is within the discretion of the District Court and this Court will not reverse unless a manifest abuse of discretion is shown. Palmer, 761 P.2d at 406. See also Bache v. Gilden (1992), 252 Mont. 178, 827 P.2d 817. There is nothing in the record to indicate that the District Court accorded any significant weight to this testimony. To the contrary, the court specifically stated in Finding No. 53:

> Both sides made some efforts to trace the history of the stock issued as indicated by these findings, but due to the absence of most of the corporate records and antiquity of most of the other evidence, this is largely speculative, inconclusive and unreliable.

The contested testimony certainly involved a fact in issue, the second requirement of Rule 701, M.R.Evid. It also helped to clarify plaintiff's position on that issue to the District Court. Because the evidence presented in this case was complex, confusing and incomplete, Don C. Cowles, Jr.'s testimony was helpful to the District Court in determining which of the exhibits previously admitted could determine the total number of shares.

While Rule 1006, M.R.Evid., was not mentioned or argued by the parties, we conclude that it is applicable to this issue. Rule 1006, M.R.Evid., provides:

> **Rule 1006. Summaries.**
> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court

15

may order that they be produced in court.

Rule 1006, M.R.Evid., and the identical federal rule, Rule 1006, Fed.R.Evid., have been applied in a limited number of appeals. In general, the cases would affirm the District Court's decision in this case to admit the testimony of Don C. Cowles, Jr. See, e.g., United States v. Johnson (9th Cir. 1979), 594 F.2d 1253, cert. denied, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 376 (1979) (proponent of a summary must establish that the underlying materials upon which the summary is based are admissible in evidence); United States v. Duncan (5th Cir. 1990), 919 F.2d 981, cert. denied, ___ U.S. ___, 111 S.Ct. 2036, 114 L.Ed.2d 121 (1991), reh'g denied, 991 U.S. App. Lexis 1316 (5th Cir. 1991), (rule requires only that the underlying records be voluminous and that in-court examination be inconvenient); and United States v. Citron (2nd Cir. 1986), 783 F.2d 307, appeal after remand, 853 F.2d 1055 (1988) (summaries cannot be admitted without the proper foundation).

A case from the District of Columbia circuit most closely resembles the facts before us. See United States v. Lemire (D.C. Cir. 1983), 720 F.2d 1327, cert. denied, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984). In that case, the defendants argued, as defendant argues here, that Rule 602 requires that non-expert witnesses testify only as to matters of which they have personal knowledge for the purpose of ensuring reliability.

The lay witness in Lemire was an FBI agent who was also a certified public accountant. The lay witness relied on the

16

testimony of prior witnesses and the numerous documents previously introduced. The witness summarized the evidence about a complex cash flow through offshore companies that the government had introduced by direct examination of its witnesses. The defendants objected to his testimony on the grounds that he was an improper witness under the Federal Rules of Evidence and that his testimony would unfairly prejudice their defense. The court stated:

> . . . In this case, neither Rule 602's literal language nor its overriding purpose was violated. [The witness] did not testify about any of the events underlying the trial: he only summarized evidence about cash flows that several prior witnesses had already offered. As to that evidence, he testified from his personal knowledge of the transcripts and exhibits. Hence Rule 602 does not bar his testimony.
>
> This court has not previously ruled on the admissibility of one witness's summary of evidence already presented by prior witnesses. Other courts, however, have recently confronted the question and permitted such summaries under Rule 1006, allowing for admission into evidence of summaries of documents too voluminous to be conveniently examined in court. . . . [W]e note that Rule 1006 was designed primarily as an exception to the best evidence rule, see United States v. Johnson, 594 F.2d 1253, 1255 (9th Cir.), cert. denied, 444 U.S. 964, . . . and since the evidence itself here was already before the court, there is no issue of inadmissibility under Rule 1002 as a replacement for the "best evidence." . . . Hence, "[e]ntirely aside from Rule 1006, there would still be ample authority for the admission of [summary testimony] into evidence. . . . There is an established tradition that permits a summary of evidence to be put before the jury with proper limiting instructions." . . . Thus, we conclude that the Federal Rules of Evidence do not bar use of non-expert summary testimony such as is presented in this case.

Lemire, 720 F.2d at 1347 (citations omitted) (emphasis supplied).

The court further stated:

[J]ust as an expert can assist a jury by imparting special knowledge that helps the jury to understand

17

technical evidence, a <u>non-expert summary witness can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witness throughout the trial</u>.

<u>Lemire</u>, 720 F.2d at 1348 (emphasis supplied).

While <u>Lemire</u> involved a jury trial and our case involves a trial to the court, the principles are applicable in both cases. We conclude that Rule 1006, M.R.Evid., authorized the admission of the testimony of Don C. Cowles, Jr. under the facts of this case.

The District Court concluded that the evidence regarding stock ownership was speculative, inconclusive and unreliable in various aspects. The extensive findings on the part of the District Court demonstrate that the court carefully considered all of the evidence submitted to it. We conclude that the District Court properly allowed Don C. Cowles, Jr. to assist the court by his summary testimony of other documents already in evidence under Rule 1006, M.R.Evid. We further conclude that Don C. Cowles, Jr.'s exhibits are summaries made by him based on his own perception of other admitted facts, that the summaries were helpful to the court and that his testimony and exhibits were permitted under Rules 602 and 701, M.R.Evid.

We hold the District Court did not abuse its discretion in permitting Don C. Cowles, Jr. to testify as a lay witness and to introduce summaries which he had made to clarify admitted evidence.

### III.

Did the District Court err in its award of costs to plaintiff?

Defendant contends that the District Court's award of $469.50

18

in costs to plaintiff should be reversed as plaintiff was not the prevailing party. Each party claimed 100% stock ownership at the outset of the lawsuit. Each was awarded only 50%. Defendant contends that this was a victory and a loss for both sides; therefore, no costs should have been awarded and the court should have found there was no prevailing party.

Plaintiff acknowledged during trial that he should be declared owner of only 50% of the company. He contends that he is the prevailing party because he in fact received the relief he sought.

The general rule is that the party who receives an affirmative judgment in his favor at the conclusion of the entire case is considered the prevailing party. Schmidt v. Colonial Terrace Associates (1985), 215 Mont. 62, 68, 694 P.2d 1340, 1344 appeal after rem., 223 Mont. 8, 723 P.2d 954 (1986).

We conclude that plaintiff was the prevailing party as he received the relief he asked for at trial. We hold the District Court correctly awarded costs to plaintiff.

## IV.

Did the District Court err in not granting defendant's motion for relief of judgment based on newly discovered evidence?

Defendant submitted a Rule 60(b), M.R.Civ.P., post-judgment Motion for Relief from the Judgment under Rule 60(b)(2) and § 25-11-102(1) and (4), MCA. Defendant based this motion upon newly discovered evidence which she found on March 22, 1992, consisting of stock certificates and other documents concerning ownership of Cowles Mining Company. The District Court's Judgment was dated

19

March 3, 1992. An appeal was filed on April 3, 1992. This Court granted defendant's motion to stay that appeal pending the District Court's ruling on her post-judgment motion.

Rule 60(c), M.R.Civ.P., provides that Rule 60(b) motions shall be determined within the 45-day period provided by Rule 59(d), M.R.Civ.P., or shall be deemed denied. The time limits set forth in Rule 59, M.R.Civ.P, are mandatory. Marvel Brute Steel Bldg. v. Bass (1980), 189 Mont. 480, 483, 616 P.2d 380, 382. An order denying a motion is a nullity where it is issued after the time for ruling on the motion has expired. Marvel, 616 P.2d at 382.

The District Court did not rule on that motion prior to the expiration of the 45-day period allowed by Rule 59(d), M.R.Civ.P., and on June 18, 1992, defendant's motion was deemed denied. Apparently the parties created some confusion for the District Court as the court was under the impression that the Supreme Court had granted extra time for ruling on the motion. When the District Court became aware that the motion was deemed denied, it nevertheless issued its Order Denying Motion for Relief From Judgment dated July 6, 1992, stating therein the reasons for denying the motion.

The District Court noted in the order that the comment may be moot, but nonetheless deemed it advisable to issue its ruling on the matter. The court's order of July 6, 1992, denied the defendant's request which is the same result as the denial by passage of time under the rule.

Defendant contends that the contents of the District Court's

20

order further illustrates the failure of the court to examine the evidence and the documents filed in this case. The District Court concluded:

> The district court has reviewed copies of all of the documents, correspondence, etc., which Ms. Sheeline has presented post-trial along with her motion and brief, and <u>finds no new evidence that would justify setting aside or modifying the judgment previously entered herein, or granting a new trial.</u> Such material includes correspondence from and to Paul C. Sheeline as late as September 1980 . . . Jean thereafter continued correspondence, payment of taxes, etc., during the ensuing years, received a letter from David Penwell (plaintiff's attorney) in 1987, and this action was filed in 1990, so the court does not find Jean would have easily forgotten the files such material was in, and she did not exercise due diligence in looking for it. It . . . is highly unlikely the "new evidence" would have produced any different result at trial for reasons hereinafter stated.
>
> . . . .
>
> . . . If anything, much of the "new evidence" confirms legal manipulating and hanky-panky to squeeze out the Cowles stockholders, and surely does not constitute sufficient or equitable grounds for setting aside the judgment or ordering a new trial.
>
> . . . .
>
> In the opinion of the district court, judicial economy would not be served by retrial herein, and it would be a gross miscarriage of justice to modify the judgment so as to deprive Cowles of his one-half interest in the property on such purportedly newly discovered evidence.

The remainder of the order reflects the court's detailed analysis of the newly discovered evidence.

> Rule 60(b)(2), M.R.Civ.P., provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b). . . . .

Newly discovered evidence may constitute grounds for a new

21

trial if the following conditions are met: (1) the alleged newly discovered evidence came to the moving party after trial; (2) it was not a want of due diligence which precluded its earlier discovery; (3) the materiality of the new evidence is so great that it would probably produce a different result on retrial; and (4) the new evidence is not merely cumulative, not tending only to impeach or discredit witnesses in the case. In re the Marriage of Barnes (1992), 251 Mont. 334, 336, 825 P.2d 201, 202-03.

The basic criterion for granting new trials because of newly discovered evidence is that the evidence could not have been discovered and produced at trial with the exercise of reasonable or due diligence. Kartes v. Kartes (1977), 175 Mont. 210, 214-15, 573 P.2d 191, 194. The moving party has the burden to show due diligence in unearthing the newly discovered evidence before relief from judgment or a new trial is proper. Brunner v. LaCasse (1990), 241 Mont. 102, 104, 785 P.2d 210, 211. "Every presumption is indulged that the movant for a new trial on the ground of newly-discovered evidence could have secured the testimony for the former trial, and the movant must negative any negligence on his part." Bushnell v. Cook (1986), 221 Mont. 296, 302, 718 P.2d 665, 669 (quoting Walter v. Evans Products Co. (1983), 207 Mont. 26, 31, 672 P.2d 613, 616).

Defendant found documents which she contends are material while in the process of moving from her home in Boston where she had lived since 1962. Affidavits from defendant, one of her attorneys, Paul C. Sheeline, William Sheeline and Judith Bleakney

22

Savage, a friend who assisted in defendant's move, swear to the following information: Prior to trial, an extensive search was conducted for Paul D. Sheeline's stock certificates and the Company records, including several searches of defendant's home, and it is understandable that defendant did not find the records as they were mailed to her by Paul C. Sheeline after her husband's death when she was very disoriented and distressed. The old files were wedged behind a broken bottom shelf in an old cabinet in her utility closet. The utility closet was packed with numerous sundry items including paint, light bulbs, and old magazines. Defendant kept important documents elsewhere. She would not have found these documents except for the fact that she was moving the old cabinet out of the closet in anticipation of moving. She previously searched the utility closet but had no reason to believe there was any important paperwork in that closet. Defendant does not remember receiving these documents or how they got into the old cabinet in the utility closet.

Defendant contends that she exercised due diligence in locating these documents prior to trial. Prior Montana cases have addressed the issue of due diligence. For example, in Kartes, the parties contested title and ownership of a ranch. Kartes, 573 P.2d at 194. This Court held the defendants did not meet the burden to show due diligence because they had not made a significant effort to go through the books, records and papers, of which the alleged "newly discovered" evidence was a part, which were in their possession and because the evidence was cumulative. Kartes, 573

23

P.2d at 194.

However, in Alan D. Nicholson, Inc. v. Cannon (1983), 207 Mont. 476, 674 P.2d 506, this Court held the district court did not abuse its discretion by granting a motion to reopen a hearing when an attorney located a misfiled document in his files four days after the hearing concluded. Another case finding due diligence is Halse v. Murphy (1989), 237 Mont. 509, 774 P.2d 418, in which this Court affirmed a district court decision to reverse a summary judgment order when a plaintiff's expert testified by signed affidavit that when he gave his deposition testimony, he was unable to render an opinion because he had not had the opportunity to review another doctor's notes and records, despite earlier extensions of time to the plaintiff for her expert to review records.

After a careful review of the defendant's evidence in this case, we conclude the District Court properly should have found that defendant exercised due diligence in looking for the Company records but was unable to find them at an earlier date.

However, before the evidence presented by defendant could be admitted, the remaining requirements for admission of newly discovered evidence must be met. Our review of the newly discovered evidence has disclosed a number of documents which were not presented at trial. Most of these are cumulative and duplicative. Nearly all of the evidence is dated after Paul D. Sheeline became interested in the Company. Stock certificates issued to the Sheelines and Alton Eldredge in 1946 are signed by

24

Alton Eldredge as president and Paul D. Sheeline as secretary of the Company. These certificates shed no light on what happened prior to 1946. If anything, they present further questions. For example, some of the stock issued prior to the date of devaluation is issued at the devalued par value. Further, a letter written by Paul C. Sheeline to his father in 1941 tends to indicate that Paul D. Sheeline thought he owned around 50% of the stock at that time, but a letter from George Naylor in April of 1946 refers to a large number of shares being transferred to Paul D. Sheeline on that day. There are proxy statements in the file--all blank and unsigned with nothing to prove the 1946 proceedings were legal. Typed and handwritten shareholder lists and records are mostly undated and all unsigned and, thus, there is no way to know who prepared them. As the District Court noted, they are inadmissible hearsay. Many of the documents concern property tax assessments and payments made by Paul D. Sheeline from 1946 through 1978. This evidence was presented at trial.

We have carefully reviewed the documents and affirm the decision of the District Court that the admission of the newly discovered evidence would not change the result of the trial. We emphasize that the Cowles Mining Company stock book was still missing and was not included in the new evidence. "Stock books and stock transfer records of a corporation serve as evidence to both creditors and the corporation of actual stockholders therein." Thisted v. Tower Management Corp. (1966), 147 Mont. 1, 9, 409 P.2d 813, 818. We conclude the admissible documents do not constitute

25

evidence likely to result in a different outcome.

We hold the District Court correctly denied the motion for relief from judgment on the basis of newly discovered evidence.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

I respectfully dissent. The appellant has met all of the conditions required for grant of a new trial. The newly discovered evidence was found subsequent to trial, the motion for new trial was diligently and timely made, the failure to previously produce the evidence was not for want of due diligence, and the new evidence was not cumulative.

As to the materiality of the new evidence, I believe it is not only material but just as probative or more so than the evidence produced at trial. This type of case, considering the antiquity, is one of limited available evidence and the courts should be considerate of all available evidence.

I would grant the motion for relief of judgment and grant a new trial.

_____
Justice

27

June 10, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Richard W. Josephson
R. Mark Josephson
JOSEPHSON & FREDRICKS
P.O. Box 1047
Big Timber, MT 59011

J. DAVID PENWELL
Attorney at Law
P.O. Box 1677
Bozeman, MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy