CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
Joan Reeves appeals a decision of the Workers’ Compensation Court denying her request for rehabilitation benefits to permit her to pursue a master’s degree in counseling. We affirm.
The sole issue raised is whether Reeves is eligible for a rehabilitation plan pursuant to § 39-71-2001, MCA (1993). Therefore we do not address the important issue discussed in the concurring opinion.
Joan Reeves injured her back in January 1994 while employed as a driver for United Parcel Service (UPS). After she reached maximum medical healing, she was restricted to work with medium physical demands, preventing her from returning to her job at UPS. She settled her workers’ compensation claim for permanent partial disability in August 1994, specifically leaving open her claim for rehabilitation benefits pursuant to § 39-71-2001, MCA (1993).
Reeves subsequently proposed a rehabilitation plan to UPS’s insurer, Liberty Mutual Fire Insurance Company, under which she would pursue a two-year program leading to a master’s degree in counseling. Liberty Mutual rejected the proposal. Reeves then petitioned the Workers’ Compensation Court for a hearing on whether she was entitled to rehabilitation benefits to pursue her plan.
The Workers’ Compensation Court held a hearing on May 31,1995, after which it denied Reeves’ request for rehabilitation benefits. The court ruled that Reeves’ proposed plan was not reasonable because she did not establish a reasonable expectation that the plan would improve her position in the job market. Reeves appeals.
*154 Is Reeves eligible for a rehabilitation plan pursuant to § 39-71-2001, MCA (1993)?
Section 39-71-2001(1), MCA (1993), provides:
Rehabilitation benefits. (1) An injured worker is eligible for rehabilitation benefits if:
(a) the injury results in permanent partial disability or permanent total disability as defined in 39-71-116;
(b) a physician certifies that the injured worker is physically unable to work at the job the worker held at the time of the injury;
(c) a rehabilitation plan completed by a rehabilitation provider and designated by the insurer certifies that the injured worker has reasonable vocational goals and a reemployment and wage potential with rehabilitation. The plan must take into consideration the worker’s age, education, training, work history, residual physical capacities, and vocational interests.
(d) a rehabilitation plan between the injured worker and the insurer is filed with the department. If the plan calls for the expenditure of funds under 39-71-1004, the department shall authorize the department of social and rehabilitation services to use the funds.
We previously interpreted and applied this statute in State of Montana ex rel. Cobbs v. Montana Department of Social and Rehabilitation Services (1995), [274 Mont. 157], 906 P.2d 204. However, that case did not involve the issue here presented.
Liberty Mutual concedes that Reeves has met the requirements of subsections (l)(a) and (b) above. However, Liberty Mutual refused to participate in documenting Reeves’ plan, instead merely assigning a rehabilitation counselor to offer her job placement assistance. Liberty Mutual did not designate Reeves’ rehabilitation plan as a plan representing “reasonable vocational goals and a reemployment and wage potential with rehabilitation,” pursuant to subsection (l)(c), above. As a result, no plan was filed with the department pursuant to subsection (l)(d) above.
Reeves contends that Liberty Mutual admitted that she would earn $32,000 per year as a licensed practical counselor in private practice. This contention is based upon a proposed finding submitted to the Workers’ Compensation Court by Liberty Mutual: “The Claimant plans, if she receives her master’s degree, to work as a licensed practical counselor earning approximately $32,000.00 a year counseling clients in private practice.”
*155 Reeves’ contention is without merit. A statement of an opposing party’s plan does not equate to a statement of belief in the merits of the plan. The statement of Reeves’ plan was not a concession that Reeves would actually earn the amount she planned to earn.
The Workers’ Compensation Court heard evidence that, prior to her employment with UPS, Reeves earned a bachelor’s degree in home economics with a family science option and that she held a long-term goal of obtaining a master’s degree in counseling. Reeves had been working at UPS to save money to return to college to continue her schooling. She did not utilize her undergraduate degree to work in the field of social services for several reasons.
First, she could earn more money as a driver for UPS. Reeves’ time-of-injury earnings with UPS were $12.82 per hour. Average wages for the social work/counseling field with a bachelor’s degree were $9.62 per hour.
Second, Reeves did not wish to work with the type of clientele with whom she would have to work, with only an undergraduate degree. In her own words:
THE COURT: [Your] degree is with the family services options and you are interested in family counseling. Why haven’t you looked for jobs in the family services area?
THE WITNESS: Because those jobs — the salaries for those jobs are — I guess basically that is not where I want to be. I’ve always wanted to be in family practice. There is a whole different clientele between entry-level jobs with my degree and the clientele that I would be working with as a counselor.
Q. What I would like you to do, Joan, is maybe explain for the judge the difference in the type of work that you would do with the bachelor’s degree that you presently hold as opposed to the type of work you would expect to do with a master’s degree.
A. Okay. Let’s take an example that maybe I was like a social worker. I don’t know that I could be an actual social worker, but something in that field.
Basically, in my opinion, you would be dealing with kids, families who were in deep trouble, financial trouble, you know, possibly abuse situations, just some real sad case scenarios. That has just never beenyou know, kids that probably are not being taken care of properly and that sort of thing.
*156 My clientele who I would like to work with are more just couples that are having problems, people that are coming to you who want to get well, who can get well, who have the — who are there because they want to solve the problem.
A lot of these other jobs you can’t help people. I mean they are in these situations by circumstance. They are, you know, due to poverty or some sort of situations, I mean in some ways beyond their control and, secondly, things that they don’t want to change. I don’t care to be involved in those situations.
I choose to be involved in situations where I feel like I can more make a difference. You get kids and their parents are abusing them and that sort of thing, and you just have no control over that. Those are not situations that I care to be involved with.
So marriage and family therapy, people come in who want to get well. They are real motivated to get well. They are paying you for a service and, you know, they want to get well. That’s who I want to work with. That’s who I’ve always wanted to work with.
Q. Would the primary difference be the type of individual that you are working with?
A. Yes.
Reeves testified that at the time of the hearing she was earning $9.81 per hour as a telemarketer and ad salesperson for the Bozeman Daily Chronicle newspaper. She further testified that, once she earned her master’s degree, she planned to be self-employed as a counselor. She stated that her father had offered to provide her with start-up costs of opening her own office.
Liberty Mutual concedes that Reeves’ rehabilitation plan is reasonable inasmuch as she has the ability to do graduate college work. Susan Kern, the rehabilitation counselor to whom Liberty Mutual referred Reeves, testified by deposition that Reeves’ vocational goal of obtaining a master’s degree in counseling is reasonable for her to attain and that Reeves has the intellectual ability to complete the program. The Workers’ Compensation Court noted “it’s reasonable to expect that she’s capable of completing the master’s program and obtaining certification as a certified counselor.”
However, the evidence as to other aspects of the reasonableness of Reeves’ plan was less favorable. Reeves testified she intends to continue living in Bozeman, Montana. Kern testified that the Bozeman area is saturated with professional counselors.
*157 Q. As a vocational counselor what is your independent impression for what this young lady should do?
A. Well, I thought — I think she’s somewhat unrealistic about her view of what therapy in the private sector is like. I think, if that’s truly her goal — and that’s her personal choice, if she wants to pursue it or not — I think it’s going to be very difficult to establish a practice in Bozeman.
In her deposition, Kern stated:
I think that Bozeman has a very competitive market, particularly in the self-employed, private counseling area. There are 52 LPC’s [licensed professional counselors] here. That’s not counting the people who have Master’s in social work or clinical psychology. So it’s very competitive. It would be very hard to start a business here unless you had a completely new or unusual background that was really in demand to people.
Other than the fact that she knows many people in Bozeman, Reeves presented no evidence of special experience or education that would set her off from her competitors in opening a counseling practice.
The Workers’ Compensation Court reasoned that Reeves’ own testimony proved that her expectations regarding employment as a private counselor were not reasonable and realistic. The court was not persuaded that, as a new counselor in the saturated counseling market of Bozeman, Montana, Reeves would be able to attract the kind of clientele to whom she wishes to limit her work.
The court concluded Reeves would be most likely to find counseling work with a social services agency. Kern testified that her investigation revealed there was often no pay differential between persons with bachelor’s and master’s degrees in agency work in the Bozeman job market. With a master’s degree, the wage could rise to as much as $14.42 per hour, but for most positions in that market, entry-level wages were the same for a person with a master’s degree as for one with a bachelor’s degree. At any rate, Reeves does not wish to do agency work because it involves the type of clientele she wishes to avoid.
While § 39-71-2001, MCA (1993), encourages rehabilitation training for persons injured on the job, the statute does not obligate the insurer to pay for every rehabilitation plan which may be conceived by a qualified injured worker. If it did, subsection (l)(c) of the statute would have no purpose.
*158 Section 39-71-2001, MCA (1993), must also be viewed in light of the purpose of the Workers’ Compensation Act to return a worker to work as soon as possible after a work-related injury or disease. Section 39-71-105(2), MCA. That purpose would not be furthered by removing a worker from the work force for two years of “rehabilitation” which will not put the worker in a better position to obtain employment.
The decision of the Workers’ Compensation Court was based upon an absence of a reasonable expectation that Reeves’ rehabilitation plan would improve her position in the job market and on the unreasonableness of the career envisioned in Reeves’ proposed rehabilitation plan as a means of employment, given her goals and self-imposed limitations. Reasonableness is a question of fact. Robertson v. Aero Power-Vac, Inc. (1995), 272 Mont. 85, 89, 899 P.2d 1078, 1080. We review the Workers’ Compensation Court’s findings of fact to determine whether they are supported by substantial evidence. Stordalen v. Ricci’s Food Farm (1993), 261 Mont. 256, 258, 862 P.2d 393, 394. Substantial evidence in the record supports the Workers’ Compensation Court’s determination that Reeves’ proposed plan did not represent “reasonable vocational goals and a reemployment and wage potential with rehabilitation,” as required under § 39-71-2001(l)(c), MCA (1993). We affirm the decision of the Workers’ Compensation Court.
JUSTICES ERDMANN and GRAY concur.