NO.  95-265

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF

JULIA KAY (HOOKER) BRYANT,

      Petitioner and Appellant,

  and

JEFFREY RICHARD BRYANT,

      Respondent  and  Cross-Appellant

FILED

MAY 06 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Michael S. Smartt; Big Sky Law Center,
          Great Falls, Montana

      For Respondent:

          K. Dale Schwanke; Jardine, Stephenson, Blewett &
          Weaver, Great Falls, Montana

Submitted on Briefs:  December 14, 1995

Decided:  May 6, 1996

Filed:

Justice Karla M. Gray delivered the Opinion of the Court.

Julia Kay Bryant (Julia) appeals from the deemed denial by the Eighth Judicial District Court, Cascade County, of her motion to set aside its order granting Jeffrey Richard Bryant's (Jeffrey) Rule 59, M.R.Civ.P., motion and its subsequent order nunc pro tunc. Jeffrey cross-appeals from the District Court's findings, conclusions and order of August 30, 1994, the order on his Rule 59 motion and the order nunc pro tunc. We affirm.

We restate the issues on appeal and cross-appeal as follows:

1. Is Julia's appeal properly before us?

2. Did the District Court err in denying Julia's motion to set aside?

3. Did the District Court err in denying Jeffrey's request for reimbursement of visitation-related transportation expenses?

The marriage of Julia and Jeffrey was dissolved by the District Court's final decree entered October 23, 1991. The decree approved and incorporated the parties' written Dissolution Agreement (Agreement) in which, among other things, Julia and Jeffrey agreed that they would have joint custody of their minor children and that Julia would be designated the children's primary physical custodian with liberal visitation rights in Jeffrey. The Agreement also established child support and provided that Julia and Jeffrey would share equally in the costs of transportation for visitation.

Julia subsequently moved to modify child support and other

2

provisions of the decree relating to the children's medical expenses and day care costs; in addition, she sought to make Jeffrey solely responsible for transportation expenses related to his visitations with the children. Jeffrey also moved to modify child support and requested the District Court to determine the amount of transportation cost reimbursement owed by Julia pursuant to the decree. On August 30, 1994, after a hearing on the motions, the court entered its findings, conclusions and order increasing Jeffrey's child support obligation, determining that Jeffrey was not entitled to reimbursement for any of the visitation-related transportation costs claimed under the 1991 decree and making Jeffrey solely responsible for future visitation-related costs incurred in transporting the children between Power and Great Falls. Julia served notice of entry on September 2, 1994.

Jeffrey subsequently filed a timely Rule 59(g), M.R.Civ.P., motion to amend the District Court's findings, conclusions and order relating primarily to child support. On October 31, 1994, the court executed its findings, conclusions and order granting Jeffrey's motion to amend. The order was filed on November 4, 1994.

Jeffrey then moved the District Court to enter an order nunc pro tunc for the sole purpose of attaching to the October 31 findings, conclusions and order the child support guideline calculations adopted by reference therein. The court entered the order nunc pro tunc on November 14, 1994.

On December 7, 1994, Julia moved the District Court to set

3

aside its findings, conclusions and order on Jeffrey's Rule 59 motion and its subsequent order nunc pro tunc. She contended that the order dated October 31, 1994, but not filed until November 4, 1994, was void for lack of jurisdiction and, as a result, that the subsequent order nunc pro tunc also was void. In essence, a grant of Julia's motion would result in reinstatement of the District Court's August 30, 1994, order. The court did not rule on Julia's motion to set aside within 45 days and, therefore, the motion was deemed denied on or about January 22, 1995.

On February 15, 1995, Julia filed a notice of appeal. Jeffrey subsequently filed a notice of cross-appeal.

We note at the outset, for clarity, that this case predates our recent amendments to Rules 59 and 60(c), M.R.Civ.P., increasing from 45 to 60 days the period during which a district court must rule on a motion made under those rules.

1. Is Julia's appeal properly before us?

Julia's February 15, 1995, notice of appeal states that she appeals from the denial of her motion to set aside the District Court's order granting Jeffrey's Rule 59 motion to amend and its related order nunc pro tunc. Her notice also states her intention to appeal directly the court's orders on Jeffrey's Rule 59 motion and nunc pro tunc. On appeal, however, Julia argues only the denial of her motion to set aside the earlier orders. Therefore, we do not address either procedurally or substantively her purported direct appeal from the District Court's earlier orders.

Jeffrey argues that Julia's appeal is untimely and, on that

4

basis, not properly before us. His argument is premised on his characterization of Julia's December 7, 1994, motion as a motion to alter or amend which, pursuant to Rule 59(g), M.R.Civ.P., must be served within 10 days after service of notice of entry of the judgment or order at issue. Because Julia's December 7, 1994, motion was not served within 10 days of service of the notice of entry of the District Court's order nunc pro tunc on November 17, 1994, Jeffrey contends that Rule 5(a)(1), M.R.App.P., required Julia to file her notice of appeal within 30 days of November 17, 1994. Under Jeffrey's theory, her failure to do so renders this appeal untimely.

The basis for Jeffrey's characterization of Julia's motion as a Rule 59(g), M.R.Civ.P., motion to alter or amend is not readily apparent. Julia clearly denominated her motion a "Motion to Set Aside." Moreover, she argued therein that the District Court did not timely rule on Jeffrey's Rule 59(g), M.R.Civ.P., motion to amend and, therefore, that its order granting Jeffrey's motion must be set aside as void for lack of jurisdiction.

Rule 60(b)(4), M.R.Civ.P., authorizes a motion to set aside an order or judgment on the grounds that the order was void. We repeatedly have held that the time period mandated by Rule 59, M.R.Civ.P., for a district court's action on a post-trial motion thereunder is jurisdictional and that a court's failure to act within the mandated period divests the court of jurisdiction. Wallinder v. Lagerquist (1982), 201 Mont. 212, 216-18, 653 P.2d 840, 842-43 (citations omitted); In re Marriage of Sell (1981), 193

5

Mont. 88, 91, 630 P.2d 222, 224 (citation omitted). An order not within the jurisdictional time limits of Rule 59, M.R.Civ.P., is "a nullity" (Marriage of Sell, 630 P.2d at 224) and such an order "can be assailed on appeal or by motion to set it aside. . . ." Evans v. Oregon Short Line R. Co. (1915), 51 Mont. 107, 112, 149 P. 715, 717.

We conclude that Julia's December 7, 1994, motion was a Rule 60(b)(4), M.R.Civ.P., motion to set aside the District Court's October 31 and November 14, 1994, orders as void for lack of jurisdiction. Her motion was deemed denied on or about January 22, 1995, pursuant to Rules 60(c) and 59, M.R.Civ.P., and her notice of appeal was filed within 30 days thereafter as required by Rule 5, M.R.App.P. We hold, therefore, that Julia's appeal from the denial of her motion to set aside was timely and that her appeal is properly before us.

2. Did the District Court err in denying Julia's motion to set aside?

The District Court executed its order granting Jeffrey's Rule 59(g), M.R.Civ.P., motion to amend on October 31, 1994, the forty-fifth day after the motion was filed. The order was filed four days later. Julia contends, on these facts, that the court did not timely rule on Jeffrey's motion to amend under Rule 59, M.R.Civ.P., and, therefore, that the court lacked jurisdiction to act thereafter. On that basis, she argues that her motion to set aside both the court's order and its subsequent, related order nunc pro tunc should have been granted.

Rule 59(g), M.R.Civ.P., requires a district court to "deter-

6

mine" or "rule on" a motion to alter or amend within the 45 days provided in Rule 59(d), M.R.Civ.P., for ruling on a motion for a new trial. The motion is deemed denied if the district court fails to do so. Rule 59(g), M.R.Civ.P. Moreover, as discussed briefly above, our cases are clear that the 45-day period contained in Rule 59 is mandatory; a court's failure to timely act divests the court of jurisdiction and renders any later order a nullity. See Pierce v. ALSC Architects, P.S. (1993), 259 Mont. 379, 381-82, 856 P.2d 969, 971; Cowles v. Sheeline (1993), 259 Mont. 1, 16, 855 P.2d 93, 102; Marvel Brute Steel Bldg. v. Bass (1980), 189 Mont. 480, 483, 616 P.2d 380, 382.

Rule 59(g), M.R.Civ.P., does not define the terms "determine" and "rule on" contained therein. Both terms, however, are commonly understood--in both the everyday and legal sense--to mean "decide." In common parlance, "deciding" is synonymous with both "ruling" and "determining." American Heritage Dictionary (3d ed. 1990). In legal terms, when a judge rules on a matter, it is meant that the judge decided the matter; a court's "determination" is its decision. Black's Law Dictionary 450 (6th ed. 1990). Thus, the plain meaning of the words "determine" and "rule on," as used in Rule 59(g), M.R.Civ.P., encompasses only the court's decision.

Julia calls our attention, however, to the following additional language in Rule 59(d), M.R.Civ.P.:

> The decision on the motion may be entered in the minutes of the court, or may be made in writing in chambers or in any county in the state where the judge may be, and be filed with the clerk of court in the county where the action is pending.

It is clear that this language provides for the manner in which the court's ruling is to be made of record. It is equally clear, however, that this language does not require the court's decision to be entered in the minutes or, if made in writing, filed with the clerk of court within the 45-day period provided in Rule 59 for making the decision. Indeed, nothing in Rule 59, M.R.Civ.P., specifically requires that the court's decision on a Rule 59 motion be made of record within the specified period for acting on the motion. To insert such a requirement where none exists would be an improper exercise of this Court's function. See § 1-2-101, MCA.

Julia cites to no case in which we have held that a district court's timely ruling under Rule 59, M.R.Civ.P., includes a requirement that the decision be made of record within the 45-day period, and we have located none. We do observe that both Marvel and Cowles might be read to stand for such a holding and to support Julia's argument here. Therefore, for purposes of clarity, we address those cases briefly.

In Marvel, we discussed at some length the effect of an order on a Rule 59 motion and the interplay between the timing of such an order and the timeliness of an appeal from that order. Marvel, 616 P.2d at 382-83. Our specific language concluded that the untimely order on a Rule 59 motion was a nullity "because it was issued after the time had expired under Rule 59, within which to rule on a motion for a new trial." Marvel, 616 P.2d at 382 (emphasis added). In Cowles, we cited to Marvel for the principle that "[a]n order denying a motion is a nullity where it is issued after the

8

time for _ruling_ on the motion has expired." _Cowles_, 855 P.2d at 102 (citation omitted) (emphasis added).

Both _Marvel_ and _Cowles_ clearly stand for the well-established principles that the Rule 59, M.R.Civ.P., time limit is mandatory and that a district court's failure to act on a Rule 59 motion within the specified time limit divests the court of jurisdiction to act on the motion. Neither, however, presented the issue of whether a ruling on a Rule 59 motion must be both executed and made of record to be timely and, therefore, within the court's jurisdiction, under Rule 59, M.R.Civ.P. Rather, close scrutiny of those opinions indicates that our use of both "ruling" and "issuance" in _Marvel_ and _Cowles_ was inadvertent and arose from the facts of those cases; it was not material to our decisions on the issues squarely presented in those cases. We conclude that _Marvel_ and _Cowles_ constitute neither controlling precedent for Julia's argument in this case nor persuasive authority for a result which would vary from our plain meaning analysis of Rule 59, M.R.Civ.P.

Here, the District Court determined and ruled on Jeffrey's Rule 59 motion on October 31, 1994, when it signed its findings, conclusions and order thereon. October 31 was the forty-fifth day after the filing of Jeffrey's motion. We conclude, therefore, that the District Court timely ruled on Jeffrey's motion under Rule 59(g), M.R.Civ.P., and, therefore, that the court acted within its jurisdiction. As a result, we hold that Julia's Rule 60(b), M.R.Civ.P., motion to set aside the court's order as void for lack of jurisdiction properly was denied.

9

3.   Did the District Court err in denying Jeffrey's request for reimbursement of visitation-related transportation expenses?

Jeffrey contended that, pursuant to the parties' Agreement and the final decree of dissolution, he was entitled to reimbursement from Julia of $1,248 as her one-half share of transportation expenses incurred in driving to and from Great Falls from his residence in Power, some 20 miles away, to pick up and return the children for visitation.  Julia resisted the claim and also sought to make Jeffrey solely responsible for both past and future visitation-related expenses

The District Court made the following finding:

> 6.     [Jeffrey] has claimed reimbursement for transportation of the children for his visitational purposes. Though [Jeffrey] was able to pick-up [sic] the children, after work (in Great Falls), to take them to his home, and though he was able to return the children from his home in Power when he returned to work in Great Falls, often times, for his own convenience, he'd have his present spouse do the transportation.  Such was an unnecessary and <u>unreasonable waste of</u> time and expense. Additionally, the parties did not <u>reasonably contemplate</u> the transportation between Great Falls and Power as a reimbursable expense within their "Dissolution Agreement."   [Emphasis added.]

"Reasonableness" is a question of fact.  Reeves v. Liberty Mut. Fire Ins. Co. (Mont. 1996), 911 P.2d 839, 842, 53 St.Rep. 88, 91 (citation omitted).  We review a district court's findings of fact to determine whether they are clearly erroneous.  In re Marriage of Brownell (1993), 263 Mont. 78, 81, 865 P.2d 307, 309 (citation omitted).

Julia and Jeffrey's Agreement awarded the parties joint custody of the children, with Julia designated as the children's

10

primary custodian and liberal visitation rights in Jeffrey. Visitation specifically was provided to Jeffrey "every other weekend and one day per week where he will pick the children up after work and then deliver them to school the following day, if applicable." Additional minimum visitation of two weeks in the summer and alternating holidays also was specifically provided. With regard to costs, the Agreement provided that Julia and Jeffrey would either meet approximately halfway between the place where visitation was to take place and the children's residence or share equally in the cost of transportation for visitation. The Agreement **was** made part of the final decree of dissolution.

At the hearing on the parties' motions, Julia testified that Jeffrey drives into Great Falls from Power every weekday for work. Both during the week and for weekend visitations, he picks the children up after school and takes them home with him to Power and then returns them to Great Falls when coming in to work the next day or, after weekends, on Monday mornings. She added that Jeffrey's current wife Robin frequently comes in and picks up the children, rather than having Jeffrey do it, and that Jeffrey had told her that he simply did not want to pick up the children himself because he did not desire to talk to her or go to her house. In Julia's view, Robin's trips were unnecessary.

Jeffrey's testimony was not dissimilar. He testified that, while he usually brought the children into Great Falls with him on school days, Robin most often picked them up when they were to go to Power and then brought them back into town. According to

11

Jeffrey, this transportation arrangement avoided day care, allowed him to avoid going to Julia's home, and permitted the children to bond with their stepbrother and half-sister. He testified that his claim for reimbursement included mileage charges for the times he picked the children up after work and then returned them to Great Falls upon going to work the next day. Robin also testified that she most often picked up the children in Great Falls and returned them after the visitation.

Jeffrey's evidence regarding the number of miles upon which he based his claim for reimbursement also was presented through Robin, who kept calendars of the visitations and tracked who did the driving on each occasion. According to the exhibit she had prepared, mileage for one of Jeffrey's round trips with the children was 41.6 miles. When Robin drove into Great Falls to pick the children up and take them to Power, and Jeffrey returned the children to Great Falls, 62.4 miles were charged; when Robin drove into town to get the children, brought them to Power, returned the children to Great Falls and then drove herself back to Power, 83.2 miles were charged. The current IRS-authorized rate for business mileage reimbursement was used to calculate the total of $2,496, reimbursement of one-half of which was sought from Julia.

Thus, the evidence regardingvisitation-related transportation costs or expenses is not in substantial conflict. It reflects that, for the most part, Jeffrey could pick up and return the children in conjunction with his own commuting to work in Great Falls. By his own testimony, Julia should not be responsible for

12

his work-related transport. However, he did not deduct the mileage for the trips he actually made with the children from the mileage for which he sought reimbursement from Julia and he offers no explanation for why those "costs" constitute visitation-related transportation expenses.

Nor did Jeffrey deduct mileage for the trips Robin made; indeed, Robin's trips added significant amounts to the mileage he claimed. The undisputed testimony was that Jeffrey could have made most of the trips himself in conjunction with his work-related commutes to and from Great Falls. Such trips would not involve visitation-related expenses. The fact that he chose not to do so on most occasions, for his own comfort and convenience and to add to the time available for the various children in his and Robin's household to bond, does not allow him to convert Robin's trips into a visitation-related expense upon which to base a claim for reimbursement from Julia.

The record before us contains substantial evidence supporting the District Court's finding that the transportation costs for which reimbursement was sought were unreasonable. The District Court did not misapprehend the effect of the evidence and we are not left with a definite and firm conviction that a mistake has been committed.

We conclude that the District Court's finding regarding the reimbursement claim is not clearly erroneous. On that basis, we hold that the District Court did not err in denying Jeffrey's request for reimbursement of visitation-related transportation

13

expenses

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

14

Justice Karla M. Gray, specially concurring

I undertake the unusual step of specially concurring in the Court's opinion, which I authored and with which I agree entirely, to bring to the attention of practitioners an issue which arose <u>sua sponte</u> during our consideration of this case. The issue is whether Jeffrey's cross-appeal was timely, and it arose in such an unusual fashion because it relates to whether the cross-appeal was properly before us. Under well-established principles, if an appeal is not timely, we do not acquire jurisdiction to entertain and determine it. Anderson v. Bashey (1990), 241 Mont. 252, 255, 787 P.2d 304, 306 (citation omitted).

Since this Court has never addressed the precise issue raised by the procedural facts of this case, and because case authority on the issue is nearly nonexistent, we properly decided not to resolve the issue in the context of this case where it might have appeared to disadvantage Jeffrey. I raise it now to alert counsel to the importance of time limits in taking an appeal and to the potential difficulty which could arise in that regard where procedural facts are, as in this case, out of the ordinary.

Jeffrey's amended notice of cross-appeal states that he appeals from the District Court's findings, conclusions and order dated August 30, 1994, from its order granting his Rule 59 motion filed November 4, 1994, and from its order nunc pro tunc entered November 14, 1994. The only error he argues on appeal, however, relates to the District Court's August 30, 1994, determinations regarding visitation-related transportation expenses.

15

The District Court entered its findings, conclusions and order on Julia and Jeffrey's motions to modify child support and other provisions of the original decree and for determination of transportation costs owed on August 30, 1994, and notice of entry was served on September 2, 1994. Thereafter, Jeffrey filed a motion to amend pursuant to Rule 59(g), M.R.Civ.P. As discussed in issue two of our opinion, the District Court timely ruled on Jeffrey's motion and its order was filed November 4, 1994. At Jeffrey's request, the court subsequently entered an order nunc pro tunc on November 14, 1994.

Jeffrey filed his "Notice of Cross Appeal" and two amended notices on February 23, February 27, and March 1, 1995, respectively. The record is clear that Jeffrey did not file any earlier notice of appeal from the court's August, October and November of 1994 orders; he waited until after the deemed denial of Julia's Rule 60(b), M.R.Civ.P., motion and, indeed, until after Julia's notice of appeal, to file his notice of cross-appeal.

In civil cases, a notice of appeal generally must be filed within 30 days from the date of entry of the judgment or order appealed from or, where service of notice of entry of the judgment or order is required by Rule 77(d), M.R.Civ.P., within 30 days from that service. Rule 5(a)(1), M.R.App.P. Here, service of notice of entry of the District Court's August 30, 1994, order, from which Jeffrey attempts to appeal, was required by Rule 77(d), M.R.Civ.P., and **was timely** made on September 2, 1994. Applying Rule 5(a)(1), M.R.App.P., Jeffrey had 30 days thereafter to file a notice of

appeal. While he failed to do so, he did file a timely Rule 59(g), M.R.Civ.P., motion to amend.

Rule 5(a)(4), M.R.App.P., separately addresses the running of the 30 days during which an appeal may be taken in instances where a party files a timely Rule 59, M.R.Civ.P., motion to alter or amend. In such a case, the 30-day appeal time runs from the entry of the court's order granting or denying the motion or, where applicable, from the deemed denial of the motion upon expiration of the 45-day period established by Rule 59(d), M.R.Civ.P. Rule 5(a)(4), M.R.App.P. The effect of Rule 5(a)(4), M.R.App.P., is to suspend the running of the appeal time under Rule 5(a)(1) pending either the district court's timely determination of a timely filed Rule 59 motion or the denial of such a motion by operation of law. See Marvel, 616 P.2d at 382.

Here, the District Court ruled on Jeffrey's timely Rule 59(g) motion on October 31 and entered its amending order on November 4, 1994. Applying the 30-day appeal period contained Rule 5(a)(4), M.R.App.P., to that date, the period during which Jeffrey could file a timely notice of appeal would expire on or about December 4, 1994. Jeffrey did not file a notice of appeal within that time period or, indeed, until February 23, 1995. With regard to Jeffrey's attempt to appeal from the court's November 14, 1994, order nunc pro tunc, Rule 5(a)(4), M.R.App.P., does not provide a separate time period for appealing from an order nunc pro tunc entered subsequent to an order on a Rule 59(g), M.R.Civ.P., motion to amend.

17

Rule 5(a)(3), M.R.App.P., allows a party to file a notice of cross-appeal within 14 days after the date on which the appealing party timely files a notice of appeal. Here, Jeffrey's notice of cross-appeal was filed within 14 days of Julia's February 15, 1995, notice of appeal.

We concluded in issue one of our opinion that Julia's appeal from the deemed denial of her Rule 60(b), M.R.Civ.P., motion to set aside was timely. The issue raised, but not resolved, here is whether that conclusion mandates a corresponding conclusion that Jeffrey's notice of cross-appeal was timely pursuant to Rule 5(a)(3), M.R.App.P., where Jeffrey's appeal related not to the denial of Julia's motion to set aside but to the earlier, and underlying, orders entered by the District Court. Stated differently, where no timely appeal was taken from the earlier orders, and Rule 60(b), M.R.Civ.P., provides that motions thereunder do not affect the finality of a judgment, can a party in Jeffrey's position "bootstrap" into a timely appeal of the earlier orders by relying on the later appeal date from the denial of another party's Rule 60(b) motion which is available to that party under Rule 60(c), M.R.Civ.P., and Rule 5, M.R.App.P.?

We do not resolve this question, and properly so. However, counsel should be aware of this potential trap for the unwary in deciding when to file an appeal or cross-appeal in circumstances similar to those presented in this case.

_____
Justice

18

May 6, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael S. Smartt
Big Sky Law Center
P.O. Box 2323
Great Falls, MT 59403

K. Dale Schwanke
Jardine, Stephenson, Blewett & Weaver
P.O. Box 2269
Great Falls, MT 59403

ED SMITH
CLERK OF THE? SUPREME COURT
STATE OF MONTANA

BY: *A. Gallagher*
Deputy