No. 96-190

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE THE MARRIAGE OF
SYLVIA HARRISON,

> Petitioner and Respondent,

and

HAROLD H. HARRISON,

> Respondent and Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

> For Appellant:
>
> > Gene A. Picotte, Attorney at Law, Helena,
> > Montana
>
> For Respondent:
>
> > James P. Reynolds; Reynolds, Motl & Sherwood,
> > Helena, Montana

FILED

MAR 13 1997

Filed:

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: January 9, 1997

Decided: March 13, 1997

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Harold H. Harrison appeals from the judgment entered by the First Judicial District Court, Lewis and Clark County, on its findings of facts, conclusions of law and decree of dissolution and from its order on his motion to alter or amend. We affirm.

We restate the issues as follows:

1. Are the District Court's findings of fact regarding the valuation of the marital home and land clearly erroneous?

2. Are the District Court's findings with regard to Sylvia Harrison's entitlement to maintenance and the amount of maintenance awarded clearly erroneous?

3. Is Sylvia entitled to attorney fees on appeal?

FACTS AND PROCEDURE

Harold and Sylvia Harrison married in 1963; both had been married before. At the time of the marriage, Harold was an attorney, and Sylvia was a social worker, in Denver, Colorado. They subsequently relocated to Helena, Montana, and Harold was admitted to the practice of law in Montana in 1972.

2

On December 15, 1995, when Harold and Sylvia were 73 and 74 years old, respectively, the District Court dissolved their marriage. The primary disputes between Harold and Sylvia were maintenance for Sylvia and the valuation and distribution of the marital home and land. The District Court ultimately valued the home and land at $218,500 (after deducting $10,000 from its overall valuation to cover needed repairs), determined that Sylvia was entitled to a full one-half share and ordered Harold to pay Sylvia $109,250 within 90 days or sell the home and land and pay her one-half of the net proceeds. The court also awarded Sylvia maintenance in the amount of $1,000 per month until she received the one-half interest in the value of the marital home and land and $300 per month thereafter until the death of either party or Harold's cessation of his law practice. Neither party was awarded attorney fees. Judgment was entered and notice of entry of judgment was filed and served.

Thereafter, Harold timely filed a Rule 59, M.R.Civ.P., motion to alter or amend or for a new trial relating primarily to the District Court's findings on maintenance. In pertinent part, the court rejected Harold's contentions that Sylvia did not need maintenance and that Harold was unable to pay it; it also deleted the reference to payment of maintenance until Harold ceased practicing law. The maintenance award remained at $300 per month until the death of either party. Harold appeals, focusing on the District Court's award of maintenance to Sylvia in the amount of $300 per month.

DISCUSSION

1. Is the District Court's finding of fact regarding the valuation of the marital home and land clearly erroneous?

At the outset, we note that Harold does not state this valuation question as a separate issue in his opening brief. Moreover, the statements on this question in his reply brief are somewhat inconsistent. He states that the "issue" is now moot, since he has paid Sylvia the $109,250 awarded as her one-half interest in the marital home and land, but also states that he is merely avoiding burdening the Court with "further" argument on the issue and refers us to the valuation-related argument in his opening brief. In any event, since Harold's views on the valuation question arise repeatedly in his opening brief, we address the valuation issue separately.

The District Court found that the total value of the parties' marital home and 120 acres of land is $228,500; the court then deducted $10,000 from that value for the cost of repairing the log portion of the home, based on Harold's evidence regarding the necessity and cost of such repairs. Harold asserts error in the overall valuation, but his assertion is entirely without merit.

We review a district court's findings of fact relating to the marital estate to determine whether they are clearly erroneous. In re Marriage of Lopez (1992), 255 Mont. 238, 241-42, 841 P.2d 1122, 1124 (citation omitted). Moreover, in a dispute over the value of property, the district court often must weigh conflicting evidence and determine which is more credible. Marriage of Lopez, 841 P.2d

4

at 1125. The court may accept any value within the range of values presented in evidence. Marriage of Lopez, 841 P.2d at 1125.

Here, two appraisers and a sales person for a real estate agency testified to the value of Harold and Sylvia's marital home and land. The values provided were $133,920, $228,500 and $244,000. The District Court chose the middle figure, specifically finding "Dr. Diehl's estimate to be the most credible estimate of the value of the property and it is hereby valued at $228,500." This amount is supported by substantial evidence which the District Court specifically determined to be the most credible evidence before it on the question of valuation; the $228,500 valuation also is within the range of values contained in the record. We conclude that the District Court's finding regarding the value of the marital home and land is not clearly erroneous.

2. Are the District Court's findings regarding Sylvia's entitlement to maintenance and the amount of maintenance awarded clearly erroneous?

The District Court found that Sylvia was entitled to maintenance under § 40-4-203(1), MCA, and set the amount of that maintenance--subsequent to the time Harold paid her the $109,250 one-half interest in the marital home and land--at $300 per month. Harold contends that the District Court erred in both regards but, again, his position is without merit.

We review a district court's findings relating to a maintenance award to determine whether they are clearly erroneous. In re Marriage of D.F.D. (1993), 261 Mont. 186, 201, 862 P.2d 368,

5

377 (citing In re Marriage of Eschenbacher (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355). In doing so, we first determine whether the findings are supported by substantial evidence; if so, we determine whether the trial court misapprehended the effect of the evidence; and, finally, we may determine that a finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has occurred. Marriage of Eschenbacher, 831 P.2d at 1355 (citation omitted).

Entitlement to maintenance in Montana is statutorily circumscribed. The so-called a-b test contained in § 40-4-203(1), MCA, authorizes an award of maintenance only when the district court finds that the spouse seeking it lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. Here, the District Court found that Sylvia is not employed or employable and that she lacks sufficient property to provide for her reasonable needs. We look to the record to ascertain whether these findings are supported by substantial evidence.

The record reflects that, at the time of the parties' marriage in 1963, Sylvia ceased working as a social worker at Harold's request. During the parties' 30-year marriage, Sylvia's only work outside the home consisted of helping Harold out in his Denver and, later, Helena law offices. That help decreased over the final five years or so of the time the parties continued to live together and ceased altogether when Sylvia and Harold separated totally in the early 1990s. Sylvia has had medical problems off and on since that

6

time, including vascular surgery. As noted above, she was 74 years old at the time the marriage was dissolved. We conclude that the District Court's finding that Sylvia is not employed or employable is supported by substantial evidence.

With regard to the court's finding that Sylvia does not have sufficient property to provide for her reasonable needs, Sylvia's total cash assets at the time of the dissolution proceedings were approximately $65,000. Her monthly income was approximately $550, consisting of $407 in Social Security benefits and $146 in dividends and interest earned on the cash assets. The court increased her monthly income to about $790 by imputing additional interest income on the grounds that she could be earning 7%, rather than 3%, interest on her cash assets.

On the expense side, Sylvia presented an exhibit establishing that her reasonable monthly expenses would be about $2,000 per month when she had reestablished a settled life for herself, to include a residence of some sort and an automobile. Netting Sylvia's monthly income of less than $800 from her reasonable monthly expenses leaves a shortfall of approximately $1,200.

The District Court also took into account that Sylvia would be receiving her share of the marital home in cash. It did so by decreasing the original $1,000 per month maintenance award to $300 per month at the time Sylvia received the $109,250 from Harold. While the court did not explain the basis for the $700 per month decrease in maintenance, that amount approximates the additional monthly interest income Sylvia could earn on the $109,250, applying

7

the court's 7% interest figure. Indeed, this seems to be the import of the District Court's determination that Sylvia would "have a pretty good amount of money set aside" at such time as she received the cash for her share of the marital home. Adding the $700 additional monthly interest income earned on the $109,250 to Sylvia's current (and imputed) income would give her a monthly income of approximately $1,500, still $500 short of the amount necessary to provide for her reasonable needs. Thus, we conclude that the record contains substantial evidence to support the District Court's finding that Sylvia does not have sufficient property to provide for her reasonable needs.

Harold's attempts to establish error in the District Court's findings with regard to Sylvia's entitlement to maintenance are entirely without merit and require minimal discussion. He contends, for example, that the parties' total monthly living expenses during the marriage were modest and never approached the $2,000 in monthly expenses, including rent, which Sylvia's evidence indicated was necessary to provide for her reasonable needs. This contention is irrelevant to the issue of whether the a-b test for entitlement to maintenance under § 40-4-203(1), MCA, has been met. In addition, it ignores Harold's estimate of his own expenses in the amount of nearly $1,700 per month, which did not include any rent or house payment because he continued to reside in the marital home.

Harold also suggests generally, and repeatedly, that Sylvia is not entitled to maintenance because her assets are sufficient to

8

provide for her own needs. He does not establish how this is so and, indeed, his suggestions in this regard amount to a request that this Court search the record for evidence supporting findings contrary to those made by the District Court. That is not our standard in reviewing a trial court's findings. See Marriage of D.F.D., 862 P.2d at 377. Here, even the District Court's careful imputation of additional interest income to Sylvia, and our interpretation of the basis for the court's decreasing maintenance from $1,000 to $300 per month when Sylvia received her cash share of the marital home, do not bring her income near the level necessary to meet her reasonable needs.

Nor does Harold's general assertion that Sylvia is being permitted to retain, untouched, capital sufficient to support herself bear out. As explained above, the $65,000 in total cash assets held by Sylvia prior to receiving her share of the marital home contributes $380 in interest (as imputed) to her monthly income and decreases--but does not eliminate--the shortfall between her income and her expenses. Moreover, even assuming a court properly could deduct the $750 to $800 rent expense included in Sylvia's anticipated monthly expenses by imputing to her the purchase of a suitable residence with the $109,250 received as her share of the marital home, Sylvia's expenses would total $1,200 to $1,250 per month and her monthly income would total approximately $790 ($407 in Social Security benefits and $380 in monthly interest on the $65,000 cash assets), leaving a substantial shortfall. Thus, no matter how Sylvia's assets are viewed, substantial evidence of

9

record supports the District Court's finding that she does not have sufficient property to provide for her reasonable needs.

Having concluded that the District Court's findings that Sylvia is not employed or employable and lacks sufficient property to provide for her reasonable needs are supported by substantial credible evidence, we further conclude that those findings are not otherwise clearly erroneous. On that basis, we hold that the District Court did not err in determining that Sylvia is entitled to maintenance pursuant to § 40-4-203(1), MCA.

The remaining issue raised by Harold is whether the District Court erred in awarding Sylvia $300 maintenance per month pursuant to § 40-4-203(2), MCA, which sets forth the factors a district court must consider in determining the amount and duration of maintenance to be awarded. Harold's primary contention in this regard is that he is unable to meet his own needs while paying the $300 per month awarded as maintenance to Sylvia and that, in requiring him to pay the maintenance, the District Court ignored the "ability to pay" consideration set forth in § 40-4-203(2)(f), MCA.

At the outset of our discussion of this issue, we address and grant Sylvia's motion to strike matters not of record which are contained in Harold's opening brief, both generally and with specific regard to this issue, and express our strong disapproval of the inclusion of such matters in the brief. In several places, Harold suggests that it is appropriate to take "judicial notice" of certain matters relevant to the case. These appear to be fact-

10

based matters not readily susceptible to judicial notice. In any event, the record contains neither a timely request by Harold that the District Court take judicial notice of the matters pursuant to Rule 201, M.R.Evid., nor an indication that the District Court did so as a matter of discretion under that Rule.

More troubling is the nonrecord "factual" material set forth over several pages of Harold's brief. It is axiomatic that this Court will not consider evidence not contained in the record on appeal. Johnson v. Killingsworth (1995), 271 Mont. 1, 3, 894 P.2d 272, 273.

Harold argues that this nonrecord factual material was contained in his motion to alter or amend or for a new trial. It should not be necessary for this Court to explain to either counsel on appeal or Harold, an attorney admitted to the practice of law in Montana, that factual matter is not "evidence of record" merely because it is referenced in a motion. Factual matter is "evidence of record" when testimony or other evidence establishing the fact has been admitted in evidence during a trial or hearing. A party's mere reference to factual matters in a motion neither renders such matters "evidence" nor incorporates it as "evidence" into the record. See Johnson, 894 P.2d at 273.

Harold also asserts that a hearing was held on his motion and that he was sworn and testified briefly at that hearing. The record before us contains a notice of hearing of Harold's motion, scheduled for March 5, 1996. The record on appeal does not contain a transcript of such a hearing and, as a result, we are unable to

11

ascertain whether, or the extent to which, Harold testified as to the nonrecord matters asserted in his opening brief on appeal. In addition, we observe that Harold does not represent to this Court that he testified at the postjudgment hearing as to all or any of the nonrecord factual matter contained in his brief. While Harold offers, in his reply brief, to supplement the record by providing a transcript of the postjudgment hearing, Rule 9(a), M.R.App.P., requires the party seeking review to provide a record sufficient to enable this Court to determine the issues raised on appeal. We are not inclined to permit a party to "piecemeal" the record on appeal, in derogation of its Rule 9(a) duty and associated time limits contained in Rules 9(b) and 10(a), M.R.App.P., in order to respond to an opposing party's legitimate challenge to nonrecord matters.

Furthermore, we observe that this dissolution proceeding commenced on March 3, 1995. A hearing was held on the question of temporary maintenance in May and June of 1995. The dissolution hearing itself occurred over two days in August and October of 1995. Thus, all of Harold's evidence should have been--and presumably was--presented prior to the time the District Court entered its findings of fact, conclusions of law and decree on December 15, 1995, and its judgment on December 20, 1995. As a general rule, a party cannot advance additional evidence in support of its position after the trial court has determined all pending matters.

Finally, in this regard, Harold contends that "much of the matter objected to was considered argument on the various findings

12

and conclusions" of the District Court and apologizes to this Court for any error in the presentation of such matters in his opening brief. Both counsel and Harold should have been aware, long before this case, of the difference between proper argument based on evidence of record and argument based on so-called "facts" not of record. While we accept the apology and the assertion that no disrespect to this Court was intended, we caution both counsel and Harold that the type of practice represented by the nonrecord factual matter in Harold's opening brief is not acceptable to this Court.

We turn now to the merits of Harold's argument that the District Court ignored his inability to pay maintenance and, as a result, did not properly apply § 40-4-203(2)(f), MCA. As stated above, § 40-4-203(2), MCA, sets forth six specific factors which must be considered by a district court in determining the amount and duration of maintenance once it has determined that a spouse is entitled to maintenance under § 40-4-203(1), MCA. It is clear from both the statutory language and our cases that, while all the factors must be considered, none is determinative. See § 40-4-203(2), MCA; In re Marriage of Cole (1988), 234 Mont. 352, 358, 763 P.2d 39, 43. It is equally clear, however, that a district court ordinarily may not award maintenance in such amounts as will render it impossible, on the facts of the case, for the paying spouse to meet his own needs and also pay the maintenance ordered. See, e.g., In re Marriage of Tow (1987), 229 Mont. 483, 489, 748 P.2d 440, 443; In re Marriage of Keel (1986), 223 Mont. 305, 309, 726

13

726 P.2d 812, 814. Harold contends that the District Court did so here. We disagree.

The court made extensive findings, both in its order awarding temporary maintenance and in its later findings, conclusions and decree with regard to Harold's ability to pay maintenance. The District Court found that Harold has Social Security income of approximately $860 per month and that he took an average of about $570 per month in cash from his checking account, which is a combined office and personal account, over the year and a half from mid-December of 1993 until mid-July of 1995. While no explanation was offered for where those monies had gone, they can be fairly attributed to personal expenditures by Harold. These findings are not challenged by Harold and, having scrutinized the record, we conclude that they are supported by substantial evidence.

The District Court also made a number of findings relating to expenditures by Harold. For example, it found that Harold had run approximately $300,000 in proceeds from a land sale through his checking account in recent years, that only $97,000 remained of that amount and that no explanation was offered for where the expenditures had gone. The court expressed alarm over this failure to account for large sums.

In this regard, Harold contends that the court overlooked an exhibit which details the disposition of the $100,000 down payment on the land sale. We observe that the exhibit does reflect that, after closing costs and payment by Harold of certain taxes and other debts, approximately $47,000 remained of the down payment as

14

of January 24, 1994; nothing on the exhibit relates to, or accounts in any manner for, the approximately $200,000 in additional land sale payments received by Harold in 1994 and 1995.

Harold also argues that he testified repeatedly that the purpose of the land sale was to have sufficient funds to "settle up" with Sylvia and to continue to pay court costs and other costs of suit in several ongoing cases in which he is engaged as counsel. Whatever the purpose of the sale, however, it does not constitute an accounting for the large sums of money to which the District Court's findings related.

The court also discussed at some length, in both its order on temporary maintenance and its findings, conclusions and decree, the state of Harold's law practice and his reliance--in contending that he is unable to pay maintenance--on the fact that he had been losing between $2,500 and $3,000 per month in the practice through the first ten months of 1995. In pertinent part, the court found that the staff expenses and client advances Harold continued to pay were substantiated, but unreasonable under the circumstances, and that they amounted to choices to continue to lose money which could not be used as a basis for avoiding the ability to pay maintenance. "Reasonableness" is a question of fact (see In re Marriage of Bryant (1996), 276 Mont. 317, 323, 916 P.2d 115, 119) and Harold cites to no case, and we know of none, where we have required a trial court to accept, for purposes of determining ability to pay maintenance, whatever numbers a self-employed person advances insofar as they relate to ability to pay.

15

Harold points to his testimony at the final hearing in contending that the amount of monthly loss in the practice had decreased by that time because another lawyer was sharing the staff expenses; he contends, as a result, that the District Court's finding that he was losing $3,000 per month is not supported by substantial evidence. Harold is technically correct in this regard, in that the District Court incorporated the cited amount from its earlier findings on temporary maintenance without taking note of Harold's later testimony that his staff expenses had decreased. At best, however, this is harmless--and not reversible--error since taking the decrease in losses into account would have bettered, rather than worsened, Harold's financial picture with regard to ability to pay maintenance. Moreover, Harold's testimony actually buttresses the District Court's finding that it was not reasonable for Harold to incur all of the practice-related losses to which he had testified, at least insofar as such losses impacted on his ability to pay maintenance.

The District Court also found that approximately $78,000 in accounts receivable were due the law practice. Substantial evidence of record supports this finding. Indeed, a listing of accounts receivable as of July 27, 1995, indicated total receivables (not including costs advanced to clients and subject to repayment) of approximately $120,000; the list, prepared at Harold's direction, categorized approximately $40,000 of the receivables as uncollectible or highly doubtful. The court clearly based its finding regarding the amount of receivables on Harold's

16

opinion--reflected on the listing--as to collectible amounts and, in doing so, also accepted Harold's testimony that--as a general rule--only 60% to 70% of total receivables ultimately would be collected.

Harold argues that even the collectible amounts are paid in such small amounts over such long periods that they have little economic effect. He cites to no record evidence in support of this generalization and his own testimony at the final hearing was that he had received about $6,100 of the receivables in the three months since the exhibit had been prepared. This testimony does not support Harold's "little economic effect" generalization and, indeed, provides further support for the court's determination that Harold was able to pay maintenance.

The District Court also found that Harold has outstanding advanced costs of approximately $25,000. This finding is fully supported by the record. Harold argues that "one does well to recover one-half the costs advanced." While this may be true, it is not supported by any evidence of record. In any event, the court's finding was related to the question of Harold's overall financial picture at the law practice, and his decisions about how to spend available funds, with regard to his ability to pay maintenance. We observe in this regard that Harold testified that most of his time and effort is directed toward several contingent fee cases and that those cases account for both the short-term losses in the practice and the large amount of advanced costs. We also observe, however, that Harold's amended proposed findings and

17

conclusions in the District Court stated that his law practice was losing substantial amounts because he was devoting much time and money to some contingent fee cases which "do not appear very hopeful at this time." Again, this proposed finding merely buttresses the District Court's concerns and findings about how Harold expends his available resources insofar as those decisions relate to his ability to pay maintenance.

We conclude that the District Court clearly, and extensively, considered Harold's ability to pay maintenance and, therefore, that Harold's argument to the contrary is without merit. We further conclude that the District Court's findings with regard to Harold's ability to pay maintenance are supported by substantial evidence and are not otherwise clearly erroneous.

3. Is Sylvia entitled to attorney fees on appeal?

As discussed at length above, the District Court correctly determined that Sylvia was entitled to maintenance because she is not employed or employable and lacks sufficient property to provide for her reasonable needs. The court also concluded that Harold and Sylvia should pay their own attorney fees.

Sylvia requests attorney fees on appeal on two grounds. First, she contends that we should award her the attorney fees she incurred in responding to the matters improperly included in Harold's brief as a sanction; and second, she argues that we should award her attorney fees in defending Harold's appeal pursuant to In re Marriage of Cole (1988), 234 Mont. 352, 763 P.2d 39.

18

With regard to the request for attorney fees incurred in responding to matters improperly included in Harold's brief as a sanction, Sylvia cites to no authority under which a sanction of this type has been awarded based on counsel's inclusion of nonrecord matters in a brief and the corresponding need for a relatively limited motion to strike. Moreover, while Rule 32, M.R.App.P., authorizes an award of damages as a sanction on appeal in certain circumstances, Sylvia does not rely on that Rule and we have applied it sparingly. We decline to do so under the circumstances presently before us.

With regard to an award of attorney fees on appeal under Marriage of Cole, it is true that we awarded such fees pursuant to § 40-4-110, MCA, in that case. Marriage of Cole, 763 P.2d at 43. We have been unable to locate any other cases specifically awarding attorney fees on appeal under the referenced statute. Moreover, our decision in Marriage of Cole is not clear with regard to the necessity for such fees; that is, the opinion does not state whether the wife had been awarded attorney fees at the district court level under § 40-4-110, MCA. Our cases are legion that the first criterion for a discretionary award of fees under the statute is a showing of necessity. See, e.g., In re Marriage of Barnard (1990), 241 Mont. 147, 154, 785 P.2d 1387, 1391.

Here, Sylvia contends that the District Court's award of maintenance constitutes a sufficient showing of need to support an award of attorney fees by this Court on appeal. We observe, however, that the District Court determined that Sylvia would have

19

sufficient property to pay her attorney fees and denied her request for those fees under § 40-4-110, MCA. Thus, it is clear that the District Court concluded that Sylvia had not made the required showing of necessity for attorney fees. Sylvia did not cross-appeal on that issue and, as a result, we cannot conclude here that the record establishes the necessity on which an award of attorney fees under § 40-4-110, MCA, must be premised. Furthermore, the propriety of a maintenance award to substantially equalize Sylvia's income and expenses on an ongoing monthly basis does not necessarily equate to necessity for attorney fees. As the District Court stated, Sylvia has "a pretty good amount of money set aside" now that she has been able to add her $109,250 share of the marital home and land to her previous cash assets of approximately $65,000.

We conclude that Sylvia is not entitled to an award of attorney fees on appeal on either of the bases she asserts.

Affirmed.

_____
Justice

We concur:

_____
William E Hunt Sr

_____
W. William Leaphart

_____
Jim Rice

Justices

20

March 13, 1997

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Gene A. Picotte
Attorney at Law
1066 Helena Ave.
Helena, MT 59601

James P. Reynolds
Reynolds, Motl and Sherwood
401 No. Last Chance Gulch
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy